[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 22, 2007
THOMAS K. KAHN
CLERK

No. 06-13498
Non-Argument Calendar

_____

Agency No. A97-191-322

RICARDO DE JESUS DE CASTRO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 22, 2007)**

Before ANDERSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Ricardo De Jesus De Castro petitions this court for review of the decision by

the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's

("IJ's") order of removal and denial of asylum, withholding of removal, and relief

under the United Nations Convention Against Torture ("CAT").[1]  For the reasons

that follow, we affirm.

## I.  BACKGROUND

De Castro, a native and citizen of Colombia, entered the United States in

June of 2002 on a non-immigrant visa, and he remained beyond the expiration

period.  The INS[2] issued a Notice to Appear, charging him with removability under

INA § 237(a)(1)(B) and 8 U.S.C. § 1227(a)(1)(B).  De Castro applied for asylum,

withholding of removal, and relief under the CAT, alleging that he had suffered

persecution from the Revolutionary Armed Forces of Colombia ("FARC") based

on his political activities.

At a hearing before an IJ, De Castro admitted the allegations in the Notice to

Appear and conceded removability, but argued that he had been persecuted by the

FARC.  In his hearing testimony, which was consistent with the facts presented in

---

[1] De Castro does not raise any arguments in his brief regarding the IJ's denial of CAT relief. Thus, he has abandoned this issue on appeal.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[2] In 2002, President Bush signed into law the Homeland Security Act, which created a new Department of Homeland Security and abolished the INS, transferring its responsibilities to the new department.  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.  Because this case initiated before the transfer, this opinion refers to the INS in the interest of clarity.

his asylum application, De Castro stated that he was a member of the Colombia Liberal Party and that he had conducted computer and carpentry courses for an organization called the Community Action Board in the Viahamor neighborhood. He stated that during a June 2000 protest rally, several men shouted insults at him and told him to stop his political activities for the Liberal Party. He learned several days later that the men were members of the FARC. According to De Castro, between June 10, 2000 and April 5, 2002, he received approximately 200 phone calls from FARC members threatening to kill him if he did not end his political and teaching activities. He claimed that during the last phone call, he was told that his name had been placed on a list of people to be killed by the FARC. De Castro also testified that his mother had suffered a nervous breakdown after she too had received phone calls from FARC members threatening to kill De Castro.

Because of the threats, De Castro stated that he attempted to hide from the FARC by moving from Bogota to Medellin. While in Medellin, however, he was approached by two FARC members who urged him to join the organization and to recruit others to join. De Castro stated that one of the men struck him on the knee with a gun and threatened to kill him. The men told De Castro that they expected a "positive response" to their entreaty within one week. De Castro then returned to Bogota in another attempt to avoid the FARC. Still fearing for his safety, however, he fled to the United States, while his mother and several of his siblings remained

3

in Colombia. De Castro testified that approximately six months after he left Colombia, FARC members murdered his cousin who had assisted him in organizing classes for the Liberal Party. He also stated that his mother had continued to receive threatening phone calls through the end of 2002.

The IJ denied all relief, finding that De Castro's testimony was credible, but that the events did not rise to the level of past persecution given that De Castro was never physically harmed by the FARC. The IJ also held that there was no evidence of a well-founded fear of future persecution. The IJ concluded that although De Castro may have a subjective fear of being physically harmed by the FARC, the failure of the FARC to make any attempt on his life, despite having numerous opportunities to do so over a period of two and one-half years, indicates that his fear was not objective. The IJ also found that De Castro's belief that the FARC murdered his cousin was not supported by independent evidence.

De Castro appealed to the BIA, which adopted and affirmed the IJ's denial of relief. He now petitions this court for review.

## II. DISCUSSION

In his petition for review, De Castro challenges the IJ's denial of relief on the grounds that the IJ failed to give adequate weight to his encounters with the FARC. He argues that his direct encounters with the FARC (including one where he was struck on the knee with a gun) and the numerous threatening phone calls he

4

and his mother received from the FARC established that he suffered past persecution that was reasonably related to his political opinion. He also argues that the FARC's continued awareness of his political and social activities, its placement of his name on its list of persons to be killed, the numerous threats, and the murder of his cousin also established that he had a well-founded fear of future persecution on account of his political opinion.

Where the BIA adopts the IJ's decision, this court reviews the IJ's decision as adopted by the BIA. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1235-36 (11th Cir. 2006). To the extent that the decision was based on a legal determination, this court reviews the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). The IJ's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (citation and internal quotation marks omitted). Additionally, "[u]nder the substantial evidence test, [this court reviews] the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere

5

fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (citation omitted).

## A. Asylum

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the applicant must establish, with specific and credible evidence, (1) past persecution on account of a statutorily-listed factor, *or* (2) a "well-founded fear" that the statutorily-listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a well-founded fear of future persecution." Silva, 448 F.3d at 1239.

If the asylum applicant establishes past persecution, he is presumed to have a

6

well-founded fear of future persecution unless the government can rebut the presumption. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (citing 8 C.F.R. § 208.13(b)(1)(i), (ii)). If he cannot show past persecution, then he must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257. The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id.

Here, we conclude that the IJ's decision is supported by substantial evidence as De Castro failed to establish that he suffered past persecution or that he had a well-founded fear of future persecution.

As this court has explained, "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen, 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotation marks omitted). Here, as evidence of past persecution, De Castro points to threatening phone calls, yelled insults, and one physical confrontation with the FARC where he was struck on the knee with a gun. Under this court's case law, however, these incidents, viewed individually or together, do *not* constitute past persecution.

7

We also conclude that De Castro has not shown a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. See Ruiz, 440 F.3d at 1257; Al Najjar, 257 F.3d at 1289. Even assuming, without deciding, that De Castro satisfied the subjective requirement, in our view, he cannot show that his fear was objectively reasonable given that: the FARC never acted on any of its threats to kill him, he had only a single physical encounter with the FARC, there was no independent evidence that the FARC was responsible for his cousin's death, and members of his immediate family have remained in Colombia without incident. Accordingly, we conclude that De Castro failed to establish a well-founded fear of future persecution.

## B. Withholding Removal

Because De Castro cannot establish eligibility for asylum relief, he therefore cannot meet the more stringent burden for withholding removal. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006).

## III. CONCLUSION

We conclude that the BIA's and IJ's denial of asylum and withholding of removal are supported by substantial evidence. Accordingly, we DENY De Castro's petition.