[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2006
THOMAS K. KAHN
CLERK

No. 05-12818

_____

Agency No. A78-910-135

YI FENG ZHENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 14, 2006)**

Before EDMONDSON, Chief Judge, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

Petitioner Yi Feng Zheng petitions for review of the Board of Immigration

Appeals' ("BIA") decision, affirming without opinion the immigration judge's

("IJ") order. The order denied Zheng's application for asylum and for withholding

of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT"). No reversible error has been shown; we deny Zheng's petition.

## I. BACKGROUND

Zheng, a native and citizen of China, illegally entered the United States in December 2002. After the Immigration and Naturalization Service ("INS") sought his removal, Zheng filed an application for asylum and withholding of removal and for CAT relief. He alleged persecution based on his membership in Falun Gong, a movement banned by the Chinese government in 1999.

In August 1999, Zheng was arrested in China for his involvement with Falun Gong. He was detained for five days, during which time he was forced to watch and read anti-Falun Gong materials and to sign a pledge not to practice Falun Gong under penalty of imprisonment. He was also dragged by his arms to a detention yard where he was made to stand in the sun for two hours.

After his release, Zheng was fired from his job because of his Falun Gong practices. He tried to find other employment in Quandong City, where he lived; but he was unsuccessful. Zheng then went to live with his parents in a rural

2

village. Zheng remained with his parents for three years, but he did not work during that time. Also during this period, local officials watched him and occasionally searched his parents' home for Falun Gong materials. But Zheng suffered no further physical abuse or detention.

Zheng submitted as evidence an excerpt of the State Department's 2002 Country Report on Human Rights Practices for China (the "Report"). The Report states that (1) the Chinese government continues a harsh and comprehensive campaign against Falun Gong; (2) Falun Gong practitioners can receive punishments ranging from loss of employment to imprisonment; (3) thousands of Falun Gong's followers have been arrested, detained, and imprisoned; (4) several hundred Falun Gong followers have died in detention since 1999; and (5) many of those that died showed signs of torture or severe beatings. The Report also indicates that police often used "excessive force" in detaining Falun Gong members; that many "credible" incidents of abuse and killings by police were reported; and that many members were imprisoned or punished administratively in reeducation-through-labor camps, mental hospitals, or rehabilitative detention. In 2001, the Chinese government "initiated a comprehensive effort to round up practitioners not already in custody" and sanctioned the use of high pressure indoctrination tactics in an effort to force practitioners to renounce Falun Gong.

3

Those practitioners who refused to recant their beliefs were sent to reeducation-through-labor camps, where beatings and torture were sometimes used. But the Report also states that the vast majority of Falun Gong practitioners who had been detained since 2000 had been released and that the harshest punishment was reserved for the movement's "core leaders."

The IJ denied Zheng's application for asylum, withholding of removal, and CAT relief. Although the IJ found Zheng's testimony credible, the IJ determined that Zheng failed to show past persecution or a well-founded fear of future persecution. On appeal, the BIA affirmed the IJ's decision without opinion.

## II. STANDARD OF REVIEW

The IJ's opinion, which was summarily adopted by the BIA, is the final agency determination subject to our review. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review all legal issues de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review the IJ's factual determinations under the substantial evidence test and must affirm if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Al Najjar, 257 F.3d at 1284. "Under this highly

4

deferential standard of review, the IJ's decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (citations omitted).

## III. DISCUSSION

Zheng contends he suffered past persecution sufficient to compel asylum and withholding of removal given these events: (1) the Chinese government detained him; (2) he lost his job and was unable to find other employment in his home city; and (3) he was subjected to periodic searches by officials in the village where he came to reside. Zheng further asserts that because the Chinese government continues to persecute Falun Gong practitioners, his continued active participation in Falun Gong gives him a well-founded fear of future persecution should he be made to return to China.[1] After review, we conclude that the evidence does not compel a conclusion that Zheng was entitled to asylum and withholding of removal.

---

[1]Zheng also asserts that he qualifies for a stay of removal because he has a probability of success on the merits for his underlying claim, and the likelihood of harm and hardship if he is removed to China is high. We previously denied his "Motion for a Stay of Deportation," which we construed as a motion for stay of removal pending disposition of the appeal.

The Attorney General or the Secretary of Homeland Security has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1); 8 U.S.C. § 1158(b)(1)(A). A "refugee" is a person:

> who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed, 388 F.3d at 818. And the "denial of asylum may be reversed only if the evidence presented by the applicant is so powerful that a reasonable factfinder would have to conclude that the requisite fear of persecution exists." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323-24 (11th Cir. 2001).

To establish asylum eligibility, Zheng must, with specific and credible evidence, show (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006) (citing 8 C.F.R. § 208.13(a), (b)). The INA does not expressly define "persecution" for purposes of qualifying as a "refugee." But we have written that "[n]ot all

6

exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355

(11th Cir. 2000). We have described persecution as an "extreme concept,

requiring more than a few isolated incidents of verbal harassment or intimidation,

and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d

at 1231 (quotations and internal marks omitted).

Although under certain circumstances detention may rise to the level of

persecution, Zheng's five-day detention during which he was not harmed does not

compel the conclusion that he experienced past persecution. See Sepulveda, 401

F.3d at 1231 (concluding that menacing phone calls and threats to family members

and other members of group did not rise to level of past persecution);

Gebremariam v. U.S. Att'y Gen., 126 Fed. Appx. 934, 937 (11th Cir. 2005)

(unpublished) (concluding that 14-day detention did not rise to level of past

persecution); see also Dandan v. Ashcroft, 339 F.3d 567, 573-74 (7th Cir. 2003)

(finding no persecution when petitioner was detained for three days without food

during which time he was beaten, resulting in swollen face); Fesseha v. Ashcroft,

333 F.3d 13, 19 (1st Cir. 2003) (finding no persecution when petitioner was

subjected to occasional 24-hour detentions); Prasad v. INS, 47 F.3d 336, 339 (9th

Cir. 1995) (finding no persecution when petitioner was held in detention for four

to six hours, hit in the stomach, and kicked from behind); Mendez-Efrain v. INS,

7

813 F.2d 279, 282-83 (9th Cir. 1987) (finding no persecution when petitioner was detained and interrogated for four days). We accept that, during his detention, Zheng was forced to watch anti-Falun Gong reeducation videos, to stand in the sun for two hours, and to sign a pledge to no longer practice Falun Gong. But no evidence shows that Zheng was hurt during this detention. See Diallo v. Ashcroft, 381 F.3d 687, 698 (7th Cir. 2004) (reviewing circuit precedent and concluding that "short detentions or detentions without physical abuse seem to have been less apt to reach the 'persecution' threshold").

Zheng's termination from his job and his inability to find another job in Quandong City is also insufficient to show past persecution. "[E]mployment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001). Although Zheng testified that he was unable to find work in Quandong City after he was fired, he did not say how long he searched for a job; and no evidence shows that he sought employment for the three years he lived in his parents' village.[2] Zheng's evidence is accordingly insufficient to compel a finding that he was deprived of all means of earning a

---

[2]The IJ noted specifically in his decision that "although [Zheng] lost his job, he's presented no evidence that he was not able to obtain other type [sic] of work or perhaps aid his parents with whatever they were doing to make a living or to farm."

8

living. That local officials watched Zheng while he lived with his parents and occasionally searched his parents' house also constitutes mere harassment and does not compel a conclusion that Zheng suffered past persecution. See Sepulveda, 401 F.3d at 1231.

Substantial evidence also supports the IJ's determination that Zheng failed to establish a well-founded fear of future persecution. If an alien does not establish past persecution, he bears the burden of showing a well-founded fear of persecution by showing these things: (1) he fears persecution based on his membership in a particular social group, political opinion, or other statutorily listed factor; (2) there is a reasonable possibility that he will suffer persecution if removed to his native country; and (3) he is unable or unwilling to return to his native country because he fears persecution. 8 C.F.R. § 208.13(b)(2)(i). To establish a "well-founded fear," Zheng must demonstrate that his fear is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257.

Zheng argues the IJ failed to consider the evidence within the context of the Chinese government's overall persecution of Falun Gong practitioners. We disagree. The IJ considered the 2002 Country Report, which detailed the Chinese government's efforts to repress Falun Gong. But the Report also states that Falun Gong followers were generally released from detention and that the harshest

9

punishments were reserved for core leaders of the movement. Zheng conceded he is not a Falun Gong leader. The evidence further indicates that Zheng was able to relocate to his parents' rural village and to live there for three years without being detained again or physically harmed despite that he admits he continues to practice Falun Gong.[3] We therefore conclude that Zheng has not carried his burden to show a reasonable possibility of future persecution upon his return to China.

Because we conclude that Zheng has not satisfied the less stringent standard for asylum, we also deny his petition for review of his claims for withholding of removal under the INA and for CAT relief. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (noting that where petitioner fails to establish claim of asylum on merits, his claims for withholding of removal and CAT relief necessarily fail); Al Najjar, 257 F.3d at 1292-93, 1303 (same).

---

[3]Zheng cannot have a well-founded fear of persecution if he could avoid persecution by relocating to another part of China, if under all the circumstances it would be reasonable to expect him to do so. 8 C.F.R. § 208.13(b)(2)(ii). Because we conclude that Zheng has not established a reasonable possibility of suffering future persecution, we need not decide whether relocation is reasonable. That Zheng successfully avoided persecution for three years in his parents' village is evidence indicating there is not a reasonable possibility Zheng will suffer future persecution upon his return to China.

10

## IV. Conclusion

Involvement with Falun Gong in China by itself does not entitle a person to asylum in the United States. We conclude that the IJ's decision is supported by substantial evidence and deny Zheng's petition.

PETITION DENIED.