[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14683
Non-Argument Calendar

_____

Agency No. A98-560-366

DONG LUAN YANG,
a.k.a. Dongluan Tang,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 23, 2009)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Dong Luan Yang, a native and citizen of the People's Republic of China, petitions this court for review of the Board of Immigration Appeals' (the "BIA") denial of his application for relief under the United Nations Convention Against Torture ("CAT"). For the reasons discussed below, we affirm the decision of the BIA.

## I.

Yang attempted to enter the United States on January 15, 2005. When he first arrived at the Miami International Airport, he was interviewed by an immigration officer. During the interview, Yang stated under oath that he intended to apply for asylum because he "was beaten up by the village chief" in China. On January 24, 2005, the Department of Homeland Security ("DHS") served Yang with a notice to appear, asserting that because Yang did not present or possess any valid entry documents, he was subject to removal pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1227(a)(7)(A)(i)(I). On that date, an asylum officer interviewed Yang, at which time Yang again stated under oath that he had been "beaten up by the chief of his village." He explained that when his family had refused to pay an unlawful fine, he had been arrested, detained for two or three days, and beaten by police officers. Yang claimed that the village chief required Yang's father to pay $500 for his release, that efforts to sue the village chief for illegal detention were thwarted by the chief's "connections," and that the chief had

2

retaliated against Yang by falsely accusing him of practicing Falun Gong.[1] He further stated that he feared he would be arrested and mistreated for practicing Falun Gong if he were returned to China. Based on these sworn statements, the asylum officer determined that Yang had established a credible fear of persecution and referred Yang's case to an immigration judge ("IJ").

At a calendar hearing on August 24, 2005, Yang admitted the factual allegations in the DHS's notice to appear and conceded that he was removable. At the same time, Yang filed his application with the immigration court for asylum, withholding of removal, and protection under the CAT on account of political opinion, membership in a particular social group. In his attached statement, Yang asserted that his mother had been sterilized for violating China's birth-control policy and that he feared returning to China because he and his family would be unable to repay the money they had borrowed to pay the "snakehead"[2] to smuggle him out of the country or to pay the fine that would be imposed upon him by the Chinese government for his illegal departure. Because he could not make these payments, Yang believed he would be imprisoned and punished by the government

_____

[1] Falun Gong is a spiritual discipline which has five sets of meditation exercises and teaches the principles of truthfulness, compassion, and forbearance. In 1999, the People's Republic of China banned the practice.

[2] Snakeheads are Chinese gang members who smuggle people into the United States or other Western countries.

and he and/or his family would be harmed by his creditors. Yang also indicated to the IJ that somebody caught trying to sneak out of the China illegally would likely be fined 10,000 yuan, approximately $1,200, and could be detained several weeks.

In further support of his applications, Yang submitted numerous documents describing the country conditions in China and giving various accounts of the Chinese government's treatment of persons repatriated after illegal departure. The United States Department of State Country Report on Human Rights Practices in China for 2005 ("Country Report") states that China's human rights record is poor and notes that, although the law forbids guards from torturing detainees, there continue to be reports of sexual and physical abuse and extortion in some detention centers in China. Yang also submitted a declaration from Professor Dean G. Rojek ("Rojek Declaration"), a scholar of Chinese criminal law at the University of Georgia, which asserts that a detainee charged with illegal emigration is in "grave danger" of torture and abuse from the Chinese government. The record also contains a 2005 country report prepared by the United Kingdom's Home Office ("UK Report"), stating that penalties for illegal emigration include a fine and imprisonment or criminal detention for not more than one year, but noting that the Chinese government did not generally mistreat first-time returnees.

In response, the government submitted a United States Department of State report from 2005 entitled, "China: Profile of Asylum Claims and Country

4

Conditions" (the "Profile"), which states that returnees to China are detained "long enough for relatives to arrange their travel home," that "fines are rare," and that "U.S. officials in China have not confirmed any cases of abuse of persons returned to China from the United States for illegal entry."

At the asylum hearing, Yang testified as follows: Yang obtained a visa for entry into Thailand for $66,000 from a snakehead who, in Yang's village, was also a cadre. Yang's mother borrowed from more than ten different friends and relatives, including the village chief, in order to fully pay the snakehead's fee. When Yang arrived in Thailand, the snakehead took his valid Chinese passport and gave him a fraudulent Japanese passport, which Yang later destroyed at the snakehead's instruction. Yang admitted that he had lied to immigration authorities upon arriving in the United States and to his asylum officer during his credible fear interview. He testified that he had not been beaten by his village chief, but that the snakehead had advised him to tell this story so that he could be "bailed out" of detention. Yang stated that he wanted to stay in the United States to earn money to help his impoverished family and to pay for health care for his ill father. He stated that he sent nearly all the money he earned in the United States to his mother in China so that she could make monthly payments to her creditors. He believed that if he were to return to China, he would have no way of satisfying his outstanding debt to his mother's creditors and they would persecute him and his family. He

5

also testified that he believed the government would persecute him for his illegal departure from China. Upon questioning from the IJ, Yang explained he could be ordered to pay a substantial fine of up to 20,000 yuan – approximately $2,500 – for his illegal departure and that he had no means of paying such a fine. He further claimed that he would be beaten by the police while detained in China because he had no money to bribe the police officers.

After the asylum hearing, the government filed additional charges of inadmissibility pursuant to INA § 212(a)(6)(C)(i), 8 U.S.C. § 1227(a)(6)(C)(i), because Yang sought to procure a benefit under the INA by fraud or willful misrepresentation of a material fact. The government based these additional charges on Yang's admitted provision of false information on two occasions to government officials. In opposition, Yang admitted the allegations, but argued that he made the false statements under duress from the snakehead. At a subsequent hearing before the IJ, Yang denied the additional charges. Following the hearing, the IJ sustained the additional charges, finding that sufficient evidence sustained the government's allegations that Yang, by willfully misrepresenting material facts in his airport interview and before the asylum officer, sought benefits through admission and through a credible fear finding. Accordingly, the IJ found that Yang was inadmissible as charged and ordered Yang removed from the United States.

Addressing the merits of Yang's claims for asylum, withholding of removal, and CAT relief, the IJ found that Yang failed to demonstrate that he had suffered past persecution or that he had a well-founded fear of future persecution in China on account of a protected ground. She noted that Yang failed to establish that any alleged persecution by the snakehead, village chief, or cadres would be motivated by a protected ground, or that he could not safely live away from the snakehead, village chief, or cadres. The IJ also found that the Chinese government has the sovereign authority to criminalize illegal departure and such criminalization, in and of itself, does not constitute persecution. Furthermore, although Yang's evidence indicated that he could be subject to fine and possibly briefly detained upon his return, the IJ found that because Yang had only illegally departed from China once, Yang was not likely to subject to disproportionate punishment or torture. The IJ also did not find Yang to be credible, given his admitted misrepresentations to immigration authorities and certain inconsistencies within his testimony and his application. Accordingly, the IJ denied Yang's application for asylum and withholding of relief and concluded that Yang failed to demonstrate a credible claim for relief under the CAT.

Yang filed a notice of appeal with the BIA, challenging the denial of his applications for asylum, withholding of removal, and CAT relief. In his brief to the BIA, Yang argued that his evidence established the prevalence of torture in

7

Chinese prisons and thereby satisfied his burden of proof for relief under CAT. His brief did not mention or raise arguments challenging the denial of his claim for asylum or his claim for withholding of removal.

The BIA adopted and affirmed the IJ's decision, rejected Yang's arguments regarding his CAT claim, and dismissed the appeal. The BIA agreed with the IJ's determination that Yang failed to meet his heavy burden of showing that he was more likely than not to be tortured upon return to China after his illegal departure from the country. The BIA concluded that because Yang illegally departed from China only once, he might face a fine, but that imposition of a fine could not amount to persecution under the INA or torture as required for relief under the CAT. Yang timely filed a petition for review before this court.

**II.**

This court reviews only the decision of the BIA, except to the extent that it expressly adopts the opinion of the IJ. See Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Factual determinations of the BIA are reviewed under the substantial evidence test, and this court "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (internal quotation omitted). A finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the

8

administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We also review credibility determinations under the substantial evidence test, and require such determinations to be supported by "specific, cogent reasons." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006). Legal determinations, however, are reviewed de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006).

## III.

We first note that the only arguments Yang raises in his petition for review refer to his claim for relief under CAT. In his appellate brief, Yang references case law applicable to his asylum claim, but makes no arguments germane to this claim or to his withholding of removal claim. As such, he has abandoned these claims before this court by failing to elaborate any arguments on them. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 (11th Cir. 1989) (holding that a passing reference to an issue in an appellate brief is insufficient to raise a claim for appeal). Accordingly, we only review Yang's claim for CAT relief.

An alien is entitled to CAT protection if he shows that he is "more likely than not to be tortured in the country of removal." Jean-Pierre v. U.S. Attorney

Gen., 500 F.3d 1315, 1323 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(4)).

Torture is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). The agency must consider all relevant evidence when making its assessment of whether it is more likely than not that the applicant will be tortured if returned to his home country, including evidence of past persecution and information about conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3)(i), (iv); see also Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006) (holding that an applicant who is unable to satisfy his burden of proof with respect to asylum is generally also unable to meet the higher standard for CAT relief).

On appeal, Yang argues that he will be arrested for illegal departure if returned to China and, based on the country conditions there as established by evidence in the record, he will be tortured because the country regularly tortures its prisoners. Yang asserts that the BIA, in making its decision, failed to consider the "ample" evidence that persons like Yang are tortured when returned to China.

10

Yang also challenges the IJ's adverse credibility determination, arguing that she did not provide "specific, cogent" reasons for her determination. For these reasons, Yang argues that this case should be remanded for a new determination.

We disagree. As noted above, the IJ found that Yang was not credible based upon his previous admitted misrepresentations to immigration authorities and to certain inconsistencies which the IJ identified within his testimony and his application. Because the IJ provided specific reasons for her determination, we conclude that this credibility determination was based on substantial evidence. See Chen, 463 F.3d at 1230 (upholding IJ's adverse credibility determination where IJ referred to "a number of inconsistencies and discrepancies between Chen's asylum application, his credible fear interview, and his testimony at the removal hearing"). Accordingly, Yang's testimony at the asylum hearing cannot be used to prove his eligibility for CAT relief.

The other documents in the record also do not demonstrate that it is more likely than not that Yang would be tortured by or with the acquiescence of Chinese officials. Here, the IJ properly considered the relevant evidence before her in denying CAT relief and substantial evidence supports this decision. Although the State Department's Country Report on China indicates that guards sometimes torture, beat, and abuse prisoners and employ harsh interrogation techniques, Yang failed to establish that it is more likely than not that he personally would be

11

tortured if removed to China. Furthermore, the State Department's Profile specifically states that first-time returnees are not usually mistreated and may be subject only to a fine for their illegal departure. In the face of this evidence, we cannot conclude that the record compels a reversal of the administrative findings. The mere fact that certain evidence in the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings. Accordingly, we conclude that substantial evidence supports the BIA and IJ's finding that Yang is not entitled to relief on the ground that he feared he would be harmed for illegally departing China.

We further note that the fact that Yang fears a fine if he returns does not establish that it is more likely than not he will be tortured. See 8 C.F.R. § 208.18(a)(1). We have previously held that a government's imposition of a single fine for criminal activity does not amount to persecution, let alone torture. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1203 (11th Cir.2005) (finding that imposition of a fine for violation of the birth control policy did not constitute persecution); see also In re J-W-S, 24 I. & N. Dec. 185, 194-95 (BIA 2007) (finding by the BIA that a fine for illegal departure would not amount to persecution). Accordingly, we agree with the BIA that Yang's fear of a fine is insufficient to entitle him to relief under the CAT.

12

**IV.**

Upon review of the administrative record and the parties' briefs, we find no reversible error. Accordingly, we deny Yang's petition for review.