[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15417
Non-Argument Calendar

_____

Agency No. A97-133-667

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2009
THOMAS K. KAHN
CLERK

LIMING HUANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 6, 2009)

Before BIRCH, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Liming Huang, proceeding pro se, seeks review of a decision by the Board

of Immigration Appeals ("BIA") affirming an order by the immigration judge

("IJ") dismissing her application for asylum, withholding of removal, and relief

under the United Nations Convention on Torture and Other Cruel, Inhuman or

Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R.

§ 208.16(c). Huang argues that the BIA erred by denying her claims because she

suffered past persecution and has a well-founded fear of future persecution. After

reviewing the record and the parties' briefs, we DENY her petition.

## I. BACKGROUND

On 12 May 2003, Huang, a native and citizen of the People's Republic of

China ("China"), attempted to enter the United States under the visa waiver

program using a Singaporean passport registered under a different name. After an

airport interview in which she admitted the falsity of her passport, she requested

asylum, and her application was referred to an IJ. In September of that year, she

applied for asylum and withholding of removal based on political opinion and the

CAT. In Huang's application, she stated that she practiced Qigong while in China

and that she was accused by the police of practicing Falun Gong.[1] She also

discussed how, beginning in May 2002, she and her mother, along with other

women, began practicing Qigong on a beach close to her home with a Qigong

---

[1] At the asylum hearing, Huang stated that Qigong and Falun Gong are similar but distinct, with Qigong focused only on the physical act of performance and Falun Gong on the spiritual component as well.

2

master her father had invited to stay with them. In October 2002, a group of Chinese police approached them on the beach, accused them of practicing Falun Gong, and arrested her mother. Huang managed to escape and decided to leave China because the police continued to look for her.

An asylum hearing was held before the IJ in February 2007. Huang, who was represented by counsel, testified that her mother was in prison because the Chinese government alleged that she had practiced Falun Gong. She stated that, although she was unsure if she and her mother were practicing Falun Gong, the Chinese government alleged that they were and wanted to arrest them based on that belief. Huang later stated that she believed herself to be practicing Falun Gong rather than Qigong because she thought the latter was fake. She also testified that it was necessary for her to leave China because the Chinese authorities wanted to arrest her, that she would be arrested and imprisoned like her mother if she returned to China, and that, upon her return, she would not be safe anywhere in China, even if she stopped practicing Falun Gong. Huang also described an incident in which a boy killed himself after the Qigong master came to live with them. The boy's family blamed the Qigong master, who they believed was part of an evil cult, for his death, and Huang stated that the authorities wanted to arrest her and her mother because it was believed that the two of them were part of the same cult.

3

Huang also discussed the October 2002 incident in which her mother was arrested. She stated that the police arrived at a beach where a total of 30 to 40 people, including herself and her mother, were practicing Qigong. She believed that the police wanted to arrest all of the practitioners, though she was unsure how many people actually were arrested. In response to the police's actions, Huang and her mother fled into a forest, followed by some policemen. Huang's mother, who suffered from asthma, soon ran out of breath and had to stop, though she told Huang to keep running. Huang's mother then pushed Huang aside, ran towards the police and began holding onto them, all while continuing to tell Huang to run. Huang testified that she did not run at first, but rather stood there and told the police not to hit her mother, though they kept doing so. Eventually, Huang ran up a hill and into a cave, where she hid for a while. At some point, she attempted to go home but, after seeing police at the door speaking with her father, decided instead to hide in the forest until her father came to look for her. After Huang crawled toward her house and quietly called to her father, he took her by boat to her aunt's house in another village. She stayed with her aunt for a month, after which time her aunt managed to get in contact with a smuggler who helped Huang leave China.

Huang stated that, even if her mother had not been practicing Qigong on the beach when the police arrived, she would have been arrested because the family

4

had taken in the Qigong master and his daughter. She acknowledged that her father, who had invited the Qigong master to stay in the house, was not arrested. She asserted that the police did not do so because he did not practice Qigong or Falun Gong. Huang also claimed that she was not arrested when she told the police not to beat her mother because only one police officer was chasing the two of them and her mother stopped that officer from catching her. She also testified that the authorities issued a notice for her arrest, though she was unsure if she brought the notice to the asylum hearing.

In addition to testifying at the hearing, Huang submitted various documents in support of her application, including: (1) the 14 October 2002 arrest and penalty decision notices for Huang's mother, Yulan Zhang, both of which indicated that the arrest was for her participation in Falun Gong; (2) a copy of a 1 November 2002 summons for Huang to appear at the county police department on 2 November 2002[2]; and (3) a 8 September 2003 letter from Huang's father, which stated that his wife was still in prison and that Huang left China to seek a better future. She also provided copies of various news articles discussing Chinese maltreatment, including imprisonment, of Falun Gong practitioners and the U.S.

---

[2] The translation of the summons lists the appearance date as 2 November 2004, but that appears to be a typographical error. Additionally, the IJ noted that Huang presented only a copy, rather than an original, of the summons. He admitted it into the record over the government's objection but stated that he would give it the weight he deemed appropriate.

5

State Department's Country Reports on Human Rights Practices in China for 2003 ("2003 Country Report"), which discussed Chinese repression of Falun Gong members.[3] According to the 2003 Country Report, Chinese authorities first cracked down on Falun Gong practitioners in 1999. Since then, mere belief in the tenets of Falun Gong could be sufficient grounds for imprisonment, and thousands of Falun Gong adherents have been imprisoned, with several hundred dying in detention due to torture, abuse, and neglect. The report also noted that the authorities generally have reserved the harshest treatment for those deemed "core leaders" of the movement and that most practitioners instead received administrative punishments.

After considering the evidence, the IJ issued an oral decision denying Huang's application for asylum, withholding of removal, and CAT relief. He found that Huang had not met her burden of proof for establishing past persecution or a well-founded fear of future persecution on account of a protected ground because she identified no events that rose to the level of past persecution and any concerns of future persecution were purely speculative. He noted that Huang had not been physically harmed, threatened, arrested, or detained, not even when the police had an opportunity to do so, i.e., at the time of her mother's arrest. Based on

---

[3] She also attached copies of the 2002 and 2005 versions of the report, which contained the same information on the Falun Gong.

6

this, the IJ determined that the police were targeting her mother, not her, likely because of concerns about the mother's role in the boy's suicide, and that there was no indication that the authorities had an interest in arresting or imprisoning Huang for her belief in Falun Gong. The IJ also noted that Huang had not produced an arrest notice or warrant pertaining to her, since the documents along those lines that she submitted pertained solely to her mother. As a result, the IJ found that she had not met her burden of establishing eligibility for asylum or withholding of removal and that she failed to establish that she would be tortured upon return to China.

Huang filed a notice of appeal with the BIA, in which she argued that the IJ had erred in denying her application because he had placed too much weight on the government's question concerning how much she paid to come to the United States and did not give her a chance to testify regarding her past persecution. In her pro se brief to the BIA, she maintained that the attempted arrest should constitute past persecution on account of her belief in Falun Gong and that the government's arrest warrant against her was evidence of a well-founded fear of future persecution. The BIA construed Huang's appeal as a general argument that she met her burden of proof. It found no clear error in the IJ's factual findings and agreed with his determinations that Huang had not alleged circumstances arising to past persecution, had not demonstrated that she had an objectively reasonable fear

7

of future persecution, and had not shown that she would be subjected to government-supported torture if returned to China. As a result, the BIA determined that there was no reason to disturb the IJ's decision and therefore dismissed Huang's appeal. Huang then filed a petition for review of the BIA's decision.

## II. DISCUSSION

In her petition for review, Huang argues that the IJ erred in denying her application because she suffered past persecution and has a well-founded fear of future persecution. She takes issue with some of the statements in the IJ's opinion. In particular, she asserts that the police did not arrest her because her mother prevented them from doing so, that her father was not arrested because he was not a Falun Gong member, and that she failed to produce her arrest warrant because it was misplaced in her travel to the United States. She also contends that she was entitled to withholding of removal and CAT relief.

Since the BIA issued its own decision here and did not expressly adopt the IJ's order, we review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). The BIA's legal determinations are reviewed de novo. See Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007). We review the BIA's factual determinations using the substantial evidence test, which requires us to affirm the BIA's decision so long as it "is supported by reasonable,

8

substantial, and probative evidence on the record considered as a whole." Id. (quotation marks and citation omitted). Under the substantial evidence test, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal" of the BIA's findings; rather, the record must "compel[]" reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The United States Attorney General or the Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined as a person outside of the country of her nationality who is unable or unwilling to return to or avail herself of the protection of her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A). An alien applying for asylum bears the burden of proving eligibility for refugee status, and we may reverse the decision to deny asylum only if we find the applicant's evidence to be "so powerful that a reasonable factfinder would have to conclude that the requisite fear of persecution exists." Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted).

9

To establish eligibility for asylum, the alien must present specific and credible evidence establishing either past persecution or a "well-founded fear of future persecution" on account of a statutorily listed factor. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. We have characterized persecution as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen. 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotation marks and citation omitted). "To establish eligibility for asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). If the alien cannot meet this burden, she still may be entitled to asylum if she can prove that she has "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." Id. (quotation marks and citation omitted). To make this latter showing, she must "present specific, detailed facts showing a good reason to fear that . . . she will be singled out for persecution on account of" the statutorily listed factor. Al Najjar, 257 F.3d at 1287 (quotation marks, alteration, and citation omitted).

In this case, substantial evidence supports the BIA's determination that Huang did not establish eligibility for asylum based on past persecution or a well-founded fear of future persecution, and the record does not compel us to reach a

10

contrary conclusion. Huang bases her claim almost exclusively on the events surrounding her mother's arrest for allegedly practicing Falun Gong. Unlike her mother, Huang was not arrested, detained, or physically injured; rather, she fled from police after they came to arrest a large group of people who were practicing Qigong on the beach. These experiences are not sufficiently extreme to rise to the level of past persecution. In Zheng, for example, we found that an asylum applicant who underwent much worse — including a five-day detention in which he was forced to watch anti-Falun Gong material, stand in the sun for two hours, and pledge to no longer practice Falun Gong in addition to being fired from his job — did not suffer past persecution. See Zheng, 451 F.3d at 1291. Huang therefore has not provided evidence to compel us to reach a contrary conclusion from the BIA.

Huang's claim of a well-founded fear of future persecution likewise lacks evidentiary support. Though she may have a subjectively genuine fear of future persecution, she has not established that her fear is objectively reasonable. No evidence in the record suggests that Huang would be arrested if returned to China. Her mother apparently is still in prison in China; however, there is no indication that her father has suffered harm since Huang left nor that Huang has been threatened since she arrived in the United States. Although Huang provided a copy of her mother's notice of arrest, she was unable to provide her own alleged notice

11

of arrest, a failure that calls into question both the existence of such a document and the rationale for Huang's claim that she came to the United States because of a fear of persecution in China. Additionally, Huang managed to live with her aunt for one month after her mother's arrest without experiencing harm, and she has not shown that this safe option would be unavailable to her upon return. Finally, we note that Huang does not claim to be a core leader of Falun Gong and thus likely would not be singled out for harsh punishment. See id. at 1291–92 (finding that merely being a practitioner of Falun Gong is insufficient to establish a well-founded fear of future persecution because most practitioners do not receive harsh punishments). Since we can find nothing in the record to compel the conclusion that Huang will be singled out for persecution upon return to China, she has not established a well-founded fear of future persecution.

Because Huang cannot meet the "well-founded fear" standard for asylum, she also cannot meet the more stringent standards for withholding of removal or CAT relief. See id. at 1292. We therefore deny both of those claims as well.

### III. CONCLUSION

Huang petitions us for review of the BIA's decision denying her application for asylum, withholding of removal, or CAT relief. The evidence does not compel the finding that she suffered past persecution or had a well-founded fear of future persecution on account of her political opinion or any other protected ground.

12

Accordingly, we DENY her petition for review.

**PETITION DENIED.**