[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16691
Non-Argument Calendar

_____

Agency No. A098-870-654

MOHAMED SEREMADY DIANE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 18, 2009)

Before TJOFLAT, BIRCH and ANDERSON, Circuit Judges.

PER CURIAM:

Mohamed Seremady Diane ("Diane"), a native and citizen of the Ivory

Coast, petitions for review of the Board of Immigration Appeal's ("BIA") final order denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). After careful review of the record, we DENY the petition.

## I. BACKGROUND

Diane applied for asylum, withholding of removal, and CAT relief in June 2005. He made eleven written corrections to his application. In January 2006, Diane received a notice to appear from the United States Department of Justice, charging him with entering the United States at an unknown location on an unknown date without a valid entry document.

Diane was the only witness who testified at his asylum hearing in May 2007. He claimed that his father and uncle were both killed by government militia because they were members of a rival political party called the RDR (Rally for Republicans). Diane's father was discovered in a mass grave along with more than twenty other corpses. Although the media reported the killings, Diane did not proffer any newspaper articles describing the event. Prior to his murder, Diane's father was arrested three times, the first arrest occurring exactly one year prior to his murder.

Diane stated that he served as the youth secretary of the RDR from 1993

2

until his arrest in March 2004. His arrest occurred during a roadblock stop en route to a RDR rally. After authorities discovered pro-RDR signs in the trunk of the car, they allegedly beat Diane, broke his arm, and shot his fleeing cousin in the back. Diane said he was imprisoned for four days, during which he was burned with a lighter and raped. He was permitted to leave the prison upon two conditions: that he pay some money and leave the country. After his brother-in-law paid the fine, Diane fled the Ivory Coast for Guinea about a week later on 7 April 2004.

Diane stayed in Guinea for several months but, unable to find work, decided to leave. Diane testified that he entered the United States on 17 August 2004 using a friend's Guinean passport with a United States visa. Diane feared that he would meet the same fate as his father if he ever returned to the Ivory Coast. Both his wife and mother, also members of the RDR, still live in the Ivory Coast.

Based on the record, the Immigration Judge ("IJ") determined that Diane did not establish the date of his arrival or his identity and citizenship. Even if Diane's application had been timely filed, the IJ found that he was not eligible for asylum, withholding or removal, or CAT relief based on Diane's lack of credibility. Additionally, the IJ concluded that Diane had firmly resettled in Guinea.

The BIA agreed that even if Diane's asylum application was timely filed, he was ineligible for asylum and withholding of removal based on the IJ's adverse

3

credibility determination and the lack of corroborating evidence. The BIA also affirmed the denial of CAT relief, noting that Diane's wife and mother continued to reside without harm in the Ivory Coast despite their membership in the same political group as Diane.

In his petition to us, Diane contends that the IJ's adverse credibility finding was erroneous because it lacked substantial evidentiary support. Consequently, Diane argues that the record compels the conclusion that he is entitled to asylum, withholding of removal, and CAT relief.

## II. DISCUSSION

We review only the BIA's decision in this case, except to the extent it adopted the IJ's reasoning in support of the adverse credibility finding. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Like any finding of fact, a credibility determination may not be overturned unless the record compels it. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Id. Other factors that may be considered include: (1) the applicant's demeanor, candor, or responsiveness, (2) the inherent plausibility of the applicant's account, and (3) any inconsistencies in the applicant's statements "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the

4

applicant's claim or any other relevant factor."  8 U.S.C. § 1158(b)(1)(B)(iii).[1]

Once an adverse credibility finding is made, the applicant bears the burden of

showing that the finding was not supported by specific, cogent reasons or was not

based on substantial evidence.  See Ruiz, 440 F.3d at 1255.  An IJ may rely solely

on an adverse credibility determination to deny asylum if the applicant produces no

evidence beyond his own testimony.  See id.

The Attorney General or the Secretary of Homeland Security may grant

asylum to an alien who meets the INA's definition of a "refugee":

> [A]ny person who is outside any country of such person's nationality
> or, in the case of a person having no nationality, is outside any
> country in which such person last habitually resided, and who is
> unable or unwilling to return to, and is unable or unwilling to avail
> himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

8 U.S.C. § 1101(a)(42)(A).  The alien must present specific, credible evidence

showing: (1) past persecution based on a statutorily protected ground, or (2) a well-

founded fear of future persecution due to a statutorily listed factor.  See Zheng v.

U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006) (per curiam).

Because the INA and the CAT impose higher standards of eligibility for

---

[1] The parties agree that the REAL ID Act of 2005 applies here because Diane's asylum application was filed after 11 May 2005, the effective date of the Act.  See Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1305 (11th Cir. 2009) (per curiam).

withholding of removal, an applicant who fails to establish a claim of asylum also cannot qualify for withholding of removal under the INA or CAT relief. See id. at 1292. Regarding withholding of removal under the INA, an alien must show that he would more likely than not be persecuted or tortured due to a statutorily protected factor upon return to his country. See Kueviakoe, 567 F.3d at 1304. To qualify for CAT relief, the applicant must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

Here, Diane has not met his burden of showing that the IJ's and BIA's adverse credibility determination was unsupported by substantial evidence or specific, cogent reasons. The BIA noted that the IJ based her adverse credibility finding "on significant omissions, the plausibility of the respondent's account, internal testimonial inconsistencies and lack of documentary evidence." Administrative Record ("AR") at 4. Of these, the BIA found particularly significant Diane's omission of his rape claim from his asylum application. Diane's explanation for the omission (that the person who prepared the application failed to include it) was unconvincing, and he could have raised the claim during his asylum interview. Thus, the BIA concluded that the IJ's determination that Diane had embellished his claim was supported by the record. We agree with the BIA that Diane's omission of the rape claim from his application seriously

6

undermined his credibility, especially given that he revised his asylum application eleven times prior to the hearing but never included this claim.

In addition, the BIA affirmed the IJ's credibility determination based on the discrepancies noted in her decision. Those discrepancies included: (1) Diane's inability to remember even the approximate date of his father's third arrest despite this being a supposedly critical event in Diane's life; (2) the curious similarity between the date of his father's first arrest on 26 October 1999 and the date of his father's death on 26 October 2000; (3) the inconsistency between Diane's testimony that he never left Georgia versus his prior affidavit that he had moved to New York; and (4) Diane's "somewhat implausible" story of befriending a taxi driver upon his arrival to the United States who just happened to be from the Ivory Coast and who could remember that Diane told him his real name. Id. at 49, 51-53. Although Diane complains that small inconsistencies which do not go to the heart of his claim are insufficient to support an adverse credibility finding, we agree with the BIA that the IJ properly considered these discrepancies under the REAL ID Act. See 8 U.S.C. § 1158(b)(1)(B)(iii).

Finally, the BIA correctly noted Diane's lack of corroborative evidence to support his claim that his father was murdered and dumped in a mass grave. Given Diane's testimony that the event was publicized on television and in the media, his failure to produce any corroborating evidence supported the denial of asylum.

7

In sum, the record does not compel us to reverse the adverse credibility determination in this case. Substantial evidence supported that finding and we are not free to "substitute [our] judgment for that of the [IJ] with respect to credibility findings." Ruiz, 440 F.3d at 1255 (quotation marks and citation omitted). As Diane has failed to establish his eligibility for asylum, he cannot meet the more stringent standards for withholding of removal under the INA and CAT relief. See Zheng, 451 F.3d at 1292.

## III.  CONCLUSION

We find no compelling reason to disturb the adverse credibility finding against Diane. Accordingly, we DENY his petition for review.

**PETITION DENIED.**