[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13566
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 18, 2010
JOHN LEY
CLERK

Agency No. A096-292-644

MARIO ALONSO MORANTE-AYASTA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 18, 2010)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Petitioner is a native and citizen of Peru.  He was admitted into the United

States at Houston, Texas, on September 16, 2001, as a nonimmigrant visitor with permission to remain here until October 15, 2001. He overstayed his visa, and the Department of Homeland Security ("DHS") served him with a notice to appear in immigration court to answer to the charge of removability as an alien who "remained in the United States for a time longer than permitted."

In February 2003, petitioner filed an application for asylum and withholding of removal. At a master calendar hearing on June 11, 2003, he appeared through counsel, admitted the allegations in the notice to appear, and conceded removability. In November 2007, he appeared with counsel before an Immigration Judge ("IJ") for a hearing on the merits of his application. He conceded that he was ineligible for asylum[1] and stated that all he was seeking was withholding of removal under the Immigration and Nationality Act ("INA") and protection under the United Nations Convention Against Torture ("CAT").

Petitioner was his only witness, and the IJ found him to be credible. Petitioner testified that he never belonged to any political organization or business association in Peru. The IJ found nothing in his testimony that would support a finding that he had been subjected to past persecution or that he would be persecuted at the hands of the Peruvian government if returned to Peru. The IJ

---

[1] His application for asylum was untimely filed and he could not show changed country conditions or extraordinary circumstances to excuse the late filing.

therefore denied Petitioner's application for withholding of removal or CAT relief, and ordered removal.[2]

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal because, as the IJ had concluded, he had failed to "establish past persecution or a clear probability of future persecution." He now seeks review of the BIA's decision, contending that, in considering his application for CAT relief, "the BIA erred in finding that the record did not indicate that it is more likely than not that the Petitioner will be subject to torture by or with the acquiescence of a member of the [Peruvian] government." Petitioner's Brief at 12. He claims that he endured mental torture because a commander in the Peruvian military threatened his life and pointed a gun at him when he attempted to collect a debt the military owed him. Petitioner also asserts that the IJ and the BIA failed to consider both his argument that he endured mental torture and the 2006 U.S. Department of State's Country Report on Human Rights Practices for Peru ("Country Report"), which he submitted into evidence.

We review administrative findings of fact under the substantial evidence test. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). Under this test, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.*

---

[2] The IJ granted voluntary departure.

at 1027. "[F]indings of fact . . . may be reversed by this court only when the record compels a reversal . . . ." *Id.* On the other hand, "[w]e review all legal issues *de novo*." *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006). Finally, because the BIA issued its own opinion without expressly adopting the IJ's opinion or reasoning, we only review the BIA's decision. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009).

Under the CAT, the applicant has the burden of proof to establish through objective evidence "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *Cadet v. Bulger*, 377 F.3d 1173, 1180 (11th Cir. 2004). The CAT defines "torture" as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). Torture is "an extreme form of cruel and inhuman treatment," that does not include "pain or suffering arising only from . . . lawful sanctions." 8 C.F.R. § 208.18(a)(2), (3). Moreover, to constitute torture, the act and its consequences must be intentional, and the act must be "directed against a person in the offender's custody or physical control." 8 C.F.R. § 208.18(a)(5), (6).

4

Finally, in order for there to be acquiescence by a public official, the "official, prior to the activity constituting the torture, [must] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7)

In sum, we have stated that in order for an act to constitute "torture," it must be: "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Cadet*, 377 F.3d at 1181.

For mental pain or suffering to amount to torture, it "must be prolonged mental harm," caused by: (i) "[t]he intentional infliction or threatened infliction of severe physical pain or suffering"; (ii) the administration or threatened administration of mind altering substances or similar procedures; (iii) "[t]he threat of imminent death"; or (iv) "[t]he threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances . . . ." 8 C.F.R. § 208.18(a)(4).

Finally, in order to determine "whether it is more likely than not that an applicant would be tortured in the proposed country of removal," the court must consider all relevant evidence, including:

5

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding the country of removal.

8 C.F.R. § 208.16(c)(3).

Vewing the evidence in the light most favorable to the BIA, we conclude that Petitioner failed to demonstrate that the record compelled the BIA to find that it is more likely than not that he would be tortured if he removed to Peru. Moreover, he did not show that either IJ or the BIA failed to consider the Country Report or his claim that he endured mental torture.

We therefore find no basis for reversing the BIA's decision denying Petitioner CAT relief.

PETITION DENIED.