[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-13234
Non-Argument Calendar

————————————————

Agency No. A097-939-260

SIP TJHIN BONG,
FALU HAVALENA,
YVONNA HENDRA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(July 30, 2014)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Sip Bong, along with his wife and daughter, natives and citizens of Indonesia, seek review of the Board of Immigration Appeals's ("BIA") decision, affirming the Immigration Judge's ("IJ") denial of Bong's application for asylum and withholding of removal. On appeal, Bong argues that, based on his asylum application and credible testimony, which was supported by the background evidence of country conditions, he established that he suffered past persecution based on his Chinese ethnicity and Christian religion. He further argues that his testimony and the current country condition evidence, specifically the 2011 State Department Country Report and Human Rights Watch's World Report 2012, established that he had a well-founded fear of future persecution. Lastly, Bong argues that the evidence established that he would more likely than not be persecuted as a Chinese Christian in Indonesia, and thus, the IJ erred in denying him withholding of removal.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). When the BIA explicitly agrees with the findings of the IJ, we review the decision of both the BIA and the IJ as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). Because the BIA agreed with the IJ's findings, and made additional observations, we review both decisions.

2

In a petition for review of a BIA decision, we review factual determinations under the substantial evidence test. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Under the substantial evidence test, we draw every reasonable inference from the evidence in favor of the decision, and reverse a finding of fact only if the record compels a reversal. *Id*. at 1351. We must affirm if the BIA's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* The fact that the record may support a contrary conclusion is insufficient to reverse. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as a person who cannot return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish eligibility for asylum, a petitioner must demonstrate either past persecution, or a well-founded fear of future persecution, based on a statutorily listed factor. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). The alien must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005). If the

3

petitioner demonstrates past persecution, there is a rebuttable presumption that he has a well-founded fear of future persecution. *Ruiz*, 440 F.3d at 1257. If the petitioner cannot demonstrate past persecution, he must demonstrate that his well-founded fear of future persecution is subjectively genuine and objectively reasonable. *Id*.

An alien seeking withholding of removal similarly must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The burden of proof for withholding of removal, however, is "more likely than not," and, thus, is "more stringent" than the standard for asylum relief. *Sepulveda,* 401 F.3d at 1232. Where a petitioner fails to establish a claim of asylum on the merits, often he necessarily fails to establish any claims for withholding of removal. *See Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1292 (11th Cir. 2006).

We have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007). In determining whether an alien suffered past persecution, the IJ must consider the cumulative effects of the incidents. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008). We have

4

previously concluded that circumstances involving only minimal violence do not compel a conclusion of persecution. *See Kazemzadeh*, 577 F.3d at 1353 (upholding the BIA's determination of no past persecution where the petitioner was "arrested while participating in a student demonstration, interrogated and beaten for five hours, and detained for four days, but . . . did not prove that he suffered any physical harm," and state authorities monitored him after his release and ordered him to appear before a university disciplinary committee and a state court); *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (upholding the BIA's determination of no past persecution where the petitioner was threatened with arrest by students who lacked the power to carry out that threat, "in conjunction with [a] minor beating" that merely resulted in "scratches and bruises"); *Sepulveda*, 401 F.3d at 1231 (upholding the BIA's determination of no past persecution where petitioner received "menacing telephone calls and threats" and the restaurant where she worked was bombed). As to economic persecution, we have held that "employment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution." *Barreto-Claro v. U.S. Att'y Gen.*, 275 F.3d 1334, 1340 (11th Cir. 2001) (holding that although petitioner suffered employment discrimination, lost his job as a taxi driver, and was forced to take menial work, he was not persecuted).

On the other hand, for example, we have held that repeated death threats accompanied by the attempted kidnapping of the petitioner's daughter and the attempted murder of the petitioner whose moving vehicle was shot at multiple times, but was he not struck by the bullets or physically injured, constituted persecution. *See Sanchez Jimenez*, 492 F.3d at 1233. In reaching this conclusion, we rejected the IJ's reliance on the fact that the petitioner managed to escape from his persecutors unharmed and concluded that being shot at while driving was "sufficiently 'extreme' to constitute persecution." *Id.* We have also held that the petitioner suffered past persecution based on the totality of the verbal death threats, an attempted attack, and one attack by three gunmen who threw the petitioner to the ground, hit him with the butt of a rifle, and broke his nose that occurred over an 18-month period. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257-58 (11th Cir. 2007).

Substantial evidence supports the BIA's determination that Bong failed to establish past persecution. Bong's testimony established that, during the May 1998 riots, rocks were thrown at him as he drove his motorcycle and his store was looted and burned. It also established that, when he was operating his store, the native Indonesians demanded money from him and threatened to kill him. When compared to our precedent, the incidents described by Bong do not compel the finding that these incidents were anything more than isolated incidents of verbal

6

harassment or intimidation. *See Kazemzadeh*, 577 F.3d at 1353; *Djonda*, 514 F.3d at 1174; *Sepulveda*, 401 F.3d at 1231. Moreover, contrary to Bong's assertion on appeal, the mistreatment he experienced was not nearly as extreme as the situation presented in *Sanchez Jimenez*. *See Sanchez Jimenez*, 492 F.3d at 1233. Additionally, the IJ and BIA did not base their determination that Bong did not suffer past persecution solely on the fact that he did not suffer any physical harm; instead the IJ and BIA's decisions reflect that the BIA considered the cumulative effects of the incidents and determined that they did not rise to the level of persecution. As to Bong's claim of past economic persecution, nothing in the record compels the conclusion that Bong's inability to continue to operate a business in Indonesia constituted persecution because no evidence indicated that his inability to do so deprived him of the means of earning a living. *See Barreto-Claro*, 275 F.3d at 1340.

Substantial evidence also supports the BIA's determination that Bong did not have a well-founded fear of future persecution. Because Bong failed to establish that he suffered past persecution, he is not entitled to a presumption of a well-founded fear of future persecution. *See Ruiz*, 440 F.3d at 1257. Bong cites no record evidence that establishes that he has a well-founded fear of future persecution in Indonesia on account of his Chinese ethnicity. Instead, he only argues that the BIA erred in concluding that he did not have well-founded fear of

7

future persecution on account of his Christian religion.  While the World Report 2012 does state that incidents of religious violence got more deadly and more frequent in 2011, this statement in the report, in light of the other evidence alone, does not compel the conclusion that Bong demonstrated a well-founded fear of future persecution.  As the BIA correctly indicated, the 2011 State Department International Religious Freedom Report provided that the Indonesian constitution protected religious freedom, even though there were some laws and regulations that restricted it.  While the report did note that there are societal abuses or discrimination based on religious freedom and that there were isolated incidents of religiously motivated terrorism, this does not indicate individual Christians were likely to be singled out for persecution.  Accordingly, Bong did not submit specific and detailed facts that established that he would be singled out for persecution.  *See Sepulveda*, 401 F.3d at 1231.

Because Bong failed to establish a claim of asylum on the merits, he failed to establish any claim for withholding of removal.  *See Zheng*, 451 F.3d at 1292. Therefore, the BIA did not err in denying his applications for asylum and withholding of removal.  Accordingly, we deny Bong's petition for review.

**PETITION DENIED.**