[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 24, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10310
Non-Argument Calendar
_____

Agency No. A096-051-929

XIUMIN LIN,
a.k.a. Xiu Min Lin,
a.k.a. Song Tian Jiu Mei,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 24, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Xiumin Lin ("Lin") petitions for review of the Board of Immigration Appeals' ("BIA") order denying asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). The BIA based its decision on the adverse credibility finding of the Immigration Judge ("IJ"). We find substantial evidence to support the adverse credibility determination and therefore DENY the petition for review.

## I. BACKGROUND

In August 2002, Lin filed an application for asylum and withholding of removal on grounds that she was persecuted in China for practicing Christianity. Administrative Record ["AR"] at 393, 397, 410-11. Her application stated that she was a native and citizen of China, and that she entered the United States in Los Angeles on 26 February 2002 using a false passport. Id. at 393. On 4 October 2002, the United States Immigration and Naturalization Service issued a notice to appear ("NTA"), charging Lin with entering the United States at an unknown place on an unknown date without being admitted or paroled after inspection by an immigration officer. Id. at 434. Accordingly, the NTA stated that Lin was an alien subject to removability pursuant to INA § 212(a)(6)(A)(i). Id. at 434-35.

Lin conceded removability at an initial hearing in October 2002.  Id. at 80-81.  She stated that she sought asylum, withholding of removal, and CAT relief.  Id. at 81.  When asked what her entry date was, Lin responded 10 February 2002.  Id.

The Forensic Document Laboratory ("FDL") of the United States Department of Homeland Security subsequently examined Lin's documents submitted with her asylum application.  Id. at 346.  The FDL's September 2004 report concluded that:  (1) Lin's Chinese resident identification card was counterfeit because it lacked security features and was produced in an unusual manner; (2) Lin's Chinese birth certificate could not be authenticated because the FDL lacked reference items, such as wet and dry seal impressions or printer samples, for comparison; (3) Lin's employee identification card likewise could not be authenticated because the FDL could not compare it to handwriting or seal examples from local employers, although the toner technology used to produce Lin's card indicated that it may not be genuine; (4) the employee payroll records that she submitted were "unexpectedly consistent with each other," indicating that the documents were prepared contemporaneously, rather than over the stated period of time; and (5) the overall appearance and writing movements of Lin's signature on her employee records differed from her signature on her asylum application.  Id.

3

A removal hearing occurred in March 2007. Id. at 165. Lin testified that she was born in February 1977 and is a single mother. Id. at 171. After a friend introduced her to Christianity in Christmas of 2000, Lin began attending weekly gatherings of a private church consisting of less than ten individuals. Id. at 172-73. The church was not legally registered in China. Id. at 174, 199. Lin became baptized in February 2001. Id. at 173. On 9 December 2001, the police arrested Lin while she was attending church at her friend's home and confiscated some religious materials. Id. at 175. Two individuals questioned her at the police station as to whether Lin knew it was illegal to gather without permission. Id. at 176. Lin responded that she was entitled to religious freedom. Id. One of the officers then allegedly hit Lin's arm with his baton. Id. Lin screamed in pain. Id. According to Lin, the second police officer grabbed Lin's hair, slapped her face twice, hit her nose, and threatened to put the baton on Lin's mouth if she continued to scream. Id. at 177. Lin stated that she was subjected to an hour of questioning and then detained for ten days during which she was interrogated twice more. Id.

Lin testified that she was released after paying a fine. Id. Authorities allegedly forbid her from leaving her residential area and ordered her to report weekly. Id. Lin said she was subsequently fired from her job as a teller at a shipping company. Id. at 178. She left China on 26 February 2002 "[b]ecause if I stayed in China I had to report myself each week and I was not allowed to leave

4

my residential area and I did not have freedom. . . ." Id. Lin believed that she would be arrested and fined if she returned to China. Id. at 179.

On cross-examination, Lin admitted that a friend helped her obtain a fake Japanese passport. Id. at 184. Lin initially stated her passport picture was taken when she was home on 20 February 2002. Id. at 185. Upon further questioning, she stated she took the picture in a studio and received the Japanese passport when she went to Hong Kong. Id. at 188-89. Lin maintained that she and her friend traveled to Hong Kong "in a very normal procedure as tourist[s]" using only a travel permit in her own name. Id. at 188, 202. When questioned as to why she was not arrested upon leaving her residential area, as she previously claimed she would be, Lin responded that she went to see her friend "secretly." Id. at 190. Lin said she flew to Los Angeles directly from Hong Kong posing as the daughter of an older man whom her friend had contacted. Id. at 185-86, 190. Lin testified that she showed her fake passport when she entered the United States, but the Japanese man pretending to be her father then took her passport away. Id. at 190, 202.

With respect to her Chinese identification card, Lin stated that her father mailed it to her from China in September 2002. Id. at 207. She recognized the card as the one she had used in China since the age of fourteen based on the card's number and her picture. Id. at 192-93. Lin at first claimed that the card was reissued to her when she turned twenty-four in 2001. Id. at 195-96. Later, the

5

court questioned her as to why her identification card was dated 1998. Id. at 201. Lin stated that she would normally have had to wait until age twenty-four to renew her card but the government permitted renewals on a nationwide scale in 1998, so she renewed hers in advance at that time. Id.

Lin further affirmed that she had signed both her asylum application and the wage forms. Id. at 180-81, 198, 205. The wage forms reflect that Lin was employed by the Min Feng Ship Company from August through October 2001. Id. at 377-382. Lin testified that her father secured the original wage documents from the accountant of the shipping company. Id. at 198. When asked as to how she could secure the original records when they are needed for an audit report, Lin explained that the audit was conducted annually, which meant the 2001 records were old documents kept on file. Id. at 210.

The IJ denied Lin's applications for asylum, withholding of removal, and CAT relief, and ordered her removed to China. Id. at 76-77. After considering Lin's demeanor and the "candor, responsiveness, rationality, internal consistency and inherent persuasiveness of [her] testimony," the IJ determined that Lin was not credible. Id. at 70-71. In support of this adverse credibility finding, the IJ cited the FDL's conclusion that Lin's documents were fraudulent or could not be authenticated. Id. at 71-73. The IJ also noted several inconsistencies in Lin's testimony: (1) Lin was able to use her own travel documents to visit Hong Kong

6

even though she was supposedly under close surveillance; (2) Lin first stated that her photograph for the Japanese passport was taken at home but later stated that it was taken at a studio in Hong Kong; and (3) she gave varying dates for when her Chinese identification card was issued. Id. at 73. The IJ further questioned Lin's explanation as to how she obtained original wage records from a company that was subject to audit on a yearly basis. Id. at 74. Beyond these discrepancies, the IJ found that Lin's testimony "appeared to be by rote, [and] she appeared to have complete command of such things as dates, but somewhat incomplete command of other specifics" of her claim. Id. at 75. Accordingly, the IJ determined that Lin had knowingly filed a frivolous application and had failed to establish that it was filed within a year of her entry date into the United States. Id. at 74-75. Even if the application were deemed timely and not frivolous, the IJ concluded that it should be denied based upon the negative credibility determination. Id. at 75-76.

The BIA sustained Lin's appeal in part and dismissed it in part. Id. at 2. First, the BIA concluded that Lin did not file a frivolous application because Lin failed to understand why the authenticity of her documents was being questioned. Id. at 3. The BIA thus sustained Lin's appeal in this regard. Id. Second, the BIA concluded that Lin's application should still be dismissed based on the IJ's adverse credibility finding. Id. That credibility determination was supported by the inconsistency in Lin's testimony regarding her ability to travel freely to Hong

7

Kong despite her claim that she was under surveillance on a very isolated island as punishment for her religious practices. Id. Additionally, the BIA deferred to the IJ's finding that Lin's demeanor was that of a person testifying by rote and not from actual recollection. Id. The FDL's conclusions that Lin's Chinese identification card was counterfeit and her wage statements were unexpectedly consistent with each other further supported the IJ's adverse credibility finding. Id. at 3-4. Accordingly, the BIA concluded that Lin "failed to establish credibly her eligibility for asylum, if timely, *arguendo*, or for withholding of removal." Id. at 4. In fact, the BIA found that Lin had not even established her identity. Id. The BIA therefore affirmed the IJ's denial of asylum, withholding of removal, and CAT relief. Id.

As a final matter, the BIA rejected Lin's claim that she was denied due process because she was not able to cross-examine the forensic expert about her findings concerning Lin's documents. Id. The BIA noted that Lin's attorney never requested such an opportunity and raised no objection to the FDL report. Id. The BIA concluded that "[t]he record shows [Lin] was offered a full and fair opportunity to present her claims." Id. at 5.

Lin now petitions this court for review. She contends that the IJ's adverse credibility finding is not supported by substantial evidence. Additionally, Lin argues that she was denied due process because she was not afforded the

8

opportunity to explain the circumstances surrounding the entry of her wage statements.

## II. DISCUSSION

Our review is limited to the BIA's decision unless the BIA expressly adopts the IJ's opinion or reasoning. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA did not make such an explicit adoption but instead set forth its own reasons for affirming the IJ's adverse credibility finding. We therefore review only the BIA's decision.

We review de novo all legal issues. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289 (11th Cir. 2006) (per curiam). The BIA's factual findings are subject to the substantial evidence test, which means they will be affirmed "if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. Pursuant to this highly deferential standard of review, we will affirm the BIA's decision unless the evidence "compels" otherwise. Id. at 1290 (quotation marks and citation omitted).

A credibility determination is a factual finding reviewed under the substantial evidence test. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam). Consequently, "we may not substitute [our] judgment for that of the [IJ] with respect to credibility findings." Id. (quotation marks and citation omitted). In determining credibility, the trier of fact should consider all the

circumstances, including the "demeanor, candor, or responsiveness of the applicant," and the consistency between the applicant's written and oral statements. 8 U.S.C. § 1158(b)(1)(B)(iii). An applicant's testimony need not be corroborated if credible. See Ruiz, 440 F.3d at 1255. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application" where the applicant does not produce evidence other than his own testimony. Id. (quotation marks and citation omitted). The applicant bears the burden of showing that an adverse credibility finding is not supported by "specific, cogent reasons, or was not based on substantial evidence." Id. (quotation marks, alterations, and citation omitted).

The adverse credibility determinations here were specific, cogent, and supported by substantial evidence. The BIA correctly identified a major inconsistency found by the IJ in Lin's testimony. Specifically, Lin testified that she would be arrested if she left her residential area and that this travel restriction was part of her punishment for practicing Christianity. AR at 190. Yet Lin also testified that when she traveled to Hong Kong, she was "doing nothing illegal at all" and "went to Hong Kong in a very normal procedure" as a tourist. Id. at 188. Lin's explanation for this discrepancy – that she traveled secretly – is belied by her ability to use a travel permit in her own name. We agree with the BIA that this inconsistency undercuts the credibility of her persecution claim.

10

The BIA also properly deferred to the IJ's demeanor finding. In her petition for review, Lin suggests alternative explanations for why she appeared to be testifying by rote, such as that she may have been overly cautious or nervous. In the absence of any evidence to support these suggestions, we may not infer them. See Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (noting that "we cannot find, or consider, facts not raised in the administrative forum"). In any event, the rote appearance of Lin's testimony was only one of several factors considered by the IJ in determining Lin's credibility. The IJ also stated that she considered "the candor, responsiveness, rationality, internal consistency, and inherent persuasiveness" of Lin's testimony. AR at 70-71. The IJ was in the best position to assess these qualities as the trier of fact. The record does not compel a contrary finding.

Furthermore, we agree with the BIA that Lin's documentation adversely affected her credibility. The FDL specifically found that Lin's Chinese identification card was counterfeit. Lin does not dispute the counterfeit nature of the card in her petition, but instead suggests that she did not know the card was counterfeit when she submitted it to the immigration court. This argument is refuted by Lin's testimony at the removal hearing, however, that when her father mailed her the card from China, she recognized it as the card she had been using in China since she turned fourteen years old and therefore presented it as proof of her

11

identity in connection with her asylum application. Moreover, Li's inconsistent answers as to when the card was reissued to her (in 2001 or in 1998) further diminished her credibility.

The same holds true with respect to Lin's wage records. The FDL found that several factors indicated these documents were not prepared monthly as stated. These factors included "the presence of excess ink on the wet seal impressions, the manner of completion of the text entries, as well as the inks used for the recipient signatures." AR at 346. Lin proffers in her petition various reasons explaining how the wage statements could be authentic even though they appeared to have been made contemporaneously. As Lin concedes, though, she did not testify during her removal hearing as to any of these explanations. We are thus prohibited from considering these arguments. See Adefemi, 386 F.3d at 1027. In light of Lin's failure to refute the FDL's findings, the BIA properly found that the counterfeit identification card and the circumspect wage records supported the IJ's adverse credibility finding. See In re O-D-, 21 I. & N. Dec. 1079, 1083 (BIA 1998) (concluding that the applicant was not credible based on the presentation of a counterfeit identity card and another probably counterfeit document).

Finally, Lin's claim of a due process violation is baseless. Lin contends that she was denied the opportunity to explain any purported similarities between her wage statements. According to Lin, the IJ or the government should have

12

questioned her about the form and character of the wage statements. Lin's argument ignores the fact that she, not the IJ or the government, bore the burden of establishing her eligibility for asylum. See 8 U.S.C. 1158(b)(1)(B)(i) ("The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 1101(a)(42)(A) of this title."). Moreover, the transcript reflects that Lin was provided ample opportunity to develop the record as to the authenticity of the wage statements. Lin's attorney questioned Lin on direct examination as to how she obtained the documents and whether she signed them. AR at 197-99. Lin's attorney also elicited testimony from Lin on redirect that she had signed the wage forms. Id. at 205. After the IJ questioned Lin about the auditing procedures involving the wage statements, the IJ asked Lin's counsel, "Anything else?" Id. at 210. Lin's attorney responded, "Nothing further." Id. at 211. The IJ then turned to Lin and asked, "Is there anything you want to tell me that hasn't been asked?" Id. Lin only wondered why the IJ was questioning the authenticity of her documents. Id. Based on the record, we agree with the BIA's conclusion that Lin had a full and fair opportunity to present her claims. No due process violation has been shown.

Lin produced no evidence other than her own testimony to establish that she was persecuted for exercising her Christian faith. In the absence of any credible testimony, the IJ and BIA correctly concluded that Lin failed to show that she was

13

entitled to asylum. <u>See</u> <u>Ruiz</u>, 440 F.3d at 1255. Because Lin has not satisfied the less stringent standard for asylum, she cannot demonstrate eligibility for withholding of removal under the INA or CAT relief. <u>See</u> <u>Zheng</u>, 451 F.3d at 1292.

## III. CONCLUSION

We AFFIRM the BIA's denial of asylum, withholding of removal, and CAT relief based on the agency's adverse credibility finding. The credibility determination was supported by specific, cogent reasons that were based on substantial evidence in the record. Accordingly, we DENY the petition for review.

**PETITION DENIED.**