[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12761
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2011
JOHN LEY
CLERK

Agency No. A088-168-561

MARIN DANCHEV YONKOV,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 21, 2011)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Marin Danchev Yonkov petitions for review of the Board of Immigration

Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of

withholding of removal.[1]  Yonkov, a citizen of Bulgaria, claims he suffered past persecution and fears future persecution in Bulgaria because of his homosexuality. After review, we deny his petition.[2]

To establish eligibility for withholding of removal, an applicant must show that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Immigration and Nationality Act ("INA") § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  To meet this standard, the applicant bears the burden to show that it is "more likely than not" that he either suffered past persecution or has a well-founded fear of future persecution on account of one of the five protected grounds.  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (hyphens omitted); 8 C.F.R. § 208.16(b)(2).[3]

---

[1]On appeal, Yonkov does not challenge the denial of his request for asylum or for relief under the Convention Against Torture, and we do not address these claims.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[2]Where, as here, the BIA adopts the IJ's reasoning, we review both the IJ's and the BIA's decisions.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review the determination that an alien is statutorily ineligible for withholding of removal under the "highly deferential" substantial evidence test, which requires us to affirm if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation marks omitted).  We will reverse "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009) (quotation marks omitted).

[3]Although this Court has not addressed the issue, the BIA has concluded that homosexuals constitute a "particular social group."  In re Toboso-Alfonso, 20 I. & N. Dec. 819, 822-23 (BIA 1990).  On appeal, the parties do not dispute that homosexuality is a protected factor.  Accordingly, we need not reach that issue.

We will not reverse a finding that an applicant failed to demonstrate a nexus between the alleged persecution and a protected ground unless the evidence compels a conclusion that the applicant has been or will be persecuted "because of" the protected ground. Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007) (quotation marks omitted). Furthermore, evidence of acts of private violence or criminal activity does not demonstrate persecution on a protected ground. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).

Although the INA does not define persecution, this Court has described persecution as "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation." Ruiz v. Gonzalez, 479 F.3d 762, 766 (11th Cir. 2007) (quotation marks omitted). This Court has concluded that threats in conjunction with brief detentions or a minor physical attack that did not result in serious physical injury do not rise to the level of persecution. See, e.g., Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) (arrest, five-hour interrogation and beating, followed by four-day detention); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (36-hour detention, beating and threat of arrest); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289-91 (11th Cir.2006) (five-day detention).

Here, Yonkov testified that he suffered two attacks in Bulgaria over an eight-year period. The first attack occurred in 1992, when Yonkov was in high school. While at a bus stop, Yonkov was called disrespectful names and his nose was broken.

The second attack occurred in December 2000, shortly before Yonkov came to the United States in January 2001. Two unseen assailants attacked Yonkov from behind while he walked down the street at night. Yonkov's attackers called him derogatory names for homosexuals and hit and kicked him, breaking his jaw. Yonkov was hospitalized for six days and had surgery to reposition his jaw, which affected his ability to chew or speak for about two months.

A medical report stated that Yonkov's attackers "aimed to rob him." Yonkov admitted that he told his doctors he was attacked as part of a robbery and explained that Bulgarian people think homosexuals are wealthy.[4] Yonkov also admitted he never saw his assailants and "guess[ed]" or "assum[ed]" that they knew he was gay because they called him by name and because he was a ballet dancer and had a "style of walking" that was "artistic."

---

[4]For the first time on appeal, Yonkov contends he did not tell his doctors the reason for his attack because of the inhospitable climate for gays in Bulgaria. There is no record evidence supporting this contention, and we cannot consider facts not raised in the administrative forum. See Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

Yonkov reported the second attack to the Bulgarian police. A detective visited Yonkov in the hospital and asked him questions. However, Yonkov does not know what happened with the police investigation because he left for the United States shortly thereafter.

Yonkov testified that in Bulgaria homosexuality is viewed as a sickness and that the Bulgarian government does not protect homosexuals. The 2008 U.S. State Department's Country report for Bulgaria indicated that: (1) Bulgarian law prohibited discrimination based on sexual orientation, (2) the Bulgarian government did not enforce the law effectively and gay Bulgarians were reluctant to pursue legal remedies because of the stigma for being openly gay; (3) reports of violence against sexual minorities were rare, and (4) the Bulgarian police arrested approximately sixty people who attempted to disrupt Bulgaria's first gay pride parade, in which approximately a hundred participants marched under tight security protection.

We cannot say that the evidence compels the conclusion that Yonkov suffered past persecution or has a well-founded fear of future persecution. First, under our precedent, the two incidents Yonkov described, which occurred eight years apart, do not amount to persecution. In any event, the evidence does not compel a conclusion that the two attacks were motivated by Yonkov's

5

homosexuality. Notably, the IJ found that the primary motive for the second attack was robbery, and that finding is supported by substantial evidence.

Furthermore, substantial evidence supports the determination that Yonkov failed to demonstrate a likelihood of future persecution. For the reasons already stated, the two attacks do not provide a reasonable basis for fearing persecution on account of a protected ground. Moreover, although Yonkov asserted that the Bulgarian police do not protect homosexuals from attack, the documentary evidence contradicted his claim. According to the 2008 Country Report, while homosexuals are stigmatized and discriminated against, physical violence against them is rare. In 2008, Bulgarian police protected marchers in the first gay pride parade and arrested about sixty protesters who attempted to disrupt it.

Because substantial evidence supports the determination that Yonkov, even if credited, was statutorily ineligible for withholding of removal, we do not address Yonkov's other argument that the IJ failed to make a clean adverse credibility determination.[5]

**PETITION DENIED.**

---

[5]We reject the government's argument that Yonkov abandoned any challenge to his statutory eligibility for withholding of removal. Although the majority of Yonkov's brief focused on the adequacy of the IJ's adverse credibility finding, the brief also raised as a separate issue whether Yonkov had met his burden to show that the attacks he experienced in Bulgaria constituted persecution on account of a protected factor. See Allstate Ins. Co., v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994) (explaining that, although issues not clearly designated in the opening brief are ordinarily deemed abandoned, those briefs are "read liberally to ascertain the issues raised on appeal").