[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10323
Non-Argument Calendar

_____

Agency No. A087-383-438

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2012
JOHN LEY
CLERK

NAGA SRINIVASA RAO PILLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 2, 2012)

Before HULL, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Naga Srinivasa Rao Pilla, proceeding *pro se*, seeks review of the Board of

Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158(a), 1231(b)(3); 8 C.F.R. § 208.16(c).  For the reasons stated below, we deny his petition for review.

## I.

Pilla, a native and citizen of India, entered the United States in 2008 on a tourist visa.  He filed an application for asylum and withholding of removal, indicating that he feared harm in India on account of his religion.  The Department of Homeland Security served Pilla with a notice to appear, charging him as removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted.

At the hearing before the IJ, Pilla testified that he was a Christian and a member of a Christian church that he had joined in 2000, while living in India.  He feared going back to India because his relatives were pressuring him to marry a Hindu woman upon his return.  Pilla stated that his mother and sister, who lived in India, experienced problems with inter-faith marriage.  When his mother converted to Christianity, his father became abusive towards her and beat her

many times in an effort to make her give up her faith, although he later himself converted to Christianity and stopped the abuse. Pilla's sister, a Christian, was pressured to marry a Hindu man because she could not find a Christian to marry within her caste group. Although the sister's husband did not prevent her from going to church, he wanted her to attend a Hindu temple, and this made the sister unhappy with the marriage.

Pilla testified that, if he goes back to India, his relatives would force him to marry a Hindu woman because he was already 34 years old and there were no suitable Christian women for him in his own caste group. He could not avoid getting married because marriage was essentially mandatory in Indian culture. Nor could he wait to find a Christian woman because he had been waiting a long time and his relatives were pressuring him. However, Pilla did not explain precisely why he could not resist his relatives' pressure. He testified that, aside from the problems experienced by his mother and sister, no one has threatened, arrested, or harmed him or any of his family members in India. Moreover, he did not fear anything in India besides being forced to marry.

The IJ denied Pilla's claims, finding that he failed to establish past persecution or a well-founded fear of future persecution. The BIA affirmed the IJ's decision on appeal. The Board agreed with the IJ that Pilla did not suffer past

persecution because he testified that he was never harmed or arrested in India. As to future persecution, although Pilla feared pressure from his relatives to marry, this harm was akin to harassment and did not rise to the level of persecution. Thus, the BIA determined that Pilla failed to demonstrate eligibility for asylum or withholding of removal. The BIA also concluded that he failed to qualify for CAT relief. Pilla now appeals.

## II.

We review the BIA's decision as the final judgment, but where the Board expressly adopts or agrees with the IJ about an issue, we review the decisions of both the IJ and the BIA regarding that issue. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review the IJ's and the BIA's factual determinations under the highly deferential substantial-evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1350-51 (quotation omitted). Under the substantial-evidence test, we may reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). We review the IJ's and the BIA's legal conclusions *de novo.*

4

*Kazemzadeh*, 577 F.3d at 1350.

An alien may receive asylum in the United States if he is a "refugee" within the meaning of the INA. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). The INA defines a refugee as a person who cannot return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). Thus, to be eligible for asylum, an alien must establish, with credible evidence, either past persecution or a well-founded fear of future persecution, both on account of a protected ground. *Sepulveda*, 401 F.3d at 1230-31.

The standard for establishing eligibility for withholding of removal is substantially the same as that for asylum. *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (describing the standard for withholding of removal). The only relevant difference is that an alien seeking withholding of removal must demonstrate a "more likely than not" probability of future persecution rather than the "reasonable possibility" required for asylum. *See id.*; *Sepulveda*, 401 F.3d at 1231. Consequently, an alien generally cannot qualify for withholding of removal if he is unable to meet the lower standard of proof for asylum. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1292-93 (11th Cir. 2001). "To establish eligibility for

5

CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government officials if returned to the designated country of removal." *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010).

We have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations and alteration omitted). For example, we have previously rejected a claim of persecution where the petitioner was arrested for participating in a student demonstration, interrogated and beaten for five hours, detained for four days, and monitored by authorities after his release. *Kazemzadeh*, 577 F.3d at 1353; *see also Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding that an alien did not suffer persecution where authorities detained him for five days, forced him to watch re-education materials, made him stand in the sun for two hours, and, after his release, monitored him and occasionally searched his residence).

In this case, substantial evidence supports the IJ's and the BIA's conclusion that Pilla did not suffer past persecution while living in India. Pilla himself testified that he was never threatened, arrested, or physically harmed in any way.

*See Kazemzadeh*, 577 F.3d at 1353 (stating that petitioner did not establish past persecution, in part because he "did not prove that he suffered any physical harm"). The fact that Pilla's mother was beaten by his father or that his sister suffered problems with her marriage does not mean that Pilla was persecuted, as nothing indicates that these circumstances threatened or harmed him personally. *See De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009 n.7 (11th Cir. 2008) ("We may consider a threatening act against another as evidence that the petitioner suffered persecution where that act concomitantly threatens the petitioner.").

As to future persecution, we agree with the BIA that the pressure from Pilla's relatives to marry constitutes no more than harassment and does not amount to persecution. *See Sepulveda*, 401 F.3d at 1231. Nothing in the record suggests that Pilla might be physically harmed if he refused to comply with his relatives' wishes. *See Kazemzadeh*, 577 F.3d at 1353. To the extent Pilla fears being mistreated by his potential future Hindu wife or in-laws, such fear is too speculative to support a finding of future persecution. *See Matter of Siburn*, 18 I. & N. Dec. 354, 358 (BIA 1983) (stating that "an alien's own speculations and conclusional statements, unsupported by independent corroborative evidence," are not sufficient to establish a well-founded fear of persecution).

Because Pilla failed to demonstrate past persecution or a well-founded fear

7

of future persecution, the BIA correctly concluded that he was ineligible for asylum or withholding of removal. *See Sepulveda*, 401 F.3d at 1230-31; *Al Najjar*, 257 F.3d at 1292-93. Furthermore, Pilla never alleged before the IJ or in his brief to this Court that he would likely be tortured in India by, or with the acquiescence of, government officials. Thus, he has failed to establish eligibility for CAT protection. *See Todorovic*, 621 F.3d at 1324. In light of the foregoing, we deny Pilla's petition for review.

**PETITION DENIED.**