[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10169
Non-Argument Calendar

_____

Agency No. A028-666-317

LEON DAMASO DURAN-QUIROZ,
a.k.a. Leon Damaso Duran,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 25, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Petitioner Leon Damaso Duran-Quiroz seeks review of the Board of

Immigration Appeals' (BIA's) final order of removal affirming the Immigration Judge's (IJ's) denial of Duran-Quiroz's applications for asylum, withholding of removal, relief under the United Nations Convention Against Torture (CAT), and cancellation of removal under the Immigration and Nationality Act (INA). After a thorough review, we deny the petition in part and dismiss in part.

I.

Duran-Quiroz, a native and citizen of Nicaragua, entered the United States without authorization in 1987. In 2009, the Department of Homeland Security (DHS) filed a Notice to Appear, charging Duran-Quiroz with removability under 8 U.S.C. § 1182(a)(6)(A)(i) — as an alien present in the United States without being admitted or paroled — and 8 U.S.C. § 1182(a)(7)(A)(i)(I) — as an alien who was not in possession of a valid immigrant visa or entry document. Duran-Quiroz conceded removability, but he filed applications for withholding of removal and cancellation of removal under the INA, withholding of removal under CAT, and, alternatively, voluntary departure. He also sought asylum based on an application previously filed in 1988.[1]

At a hearing before an IJ in 2010, Duran-Quiroz alleged that he left

[1] The former Immigration and Naturalization Service, now the DHS, terminated Duran-Quiroz's application for lack of prosecution in 1989 because he failed to appear for his asylum interview. The DHS, IJ, and BIA assumed that the application remained pending until he reinstated it in the instant case. Because neither party disputes this assumption, for purposes of this appeal, we accept it.

Nicaragua in 1987 because he suffered persecution as a result of his opposition to the Sandinista regime and that he would suffer persecution for the same reason if he is returned to Nicaragua.  The IJ denied his applications for asylum and withholding of removal based on an adverse credibility determination, finding that Duran-Quiroz's testimony was vague, unspecific, and hard to follow, especially concerning the nature of his opposition to the regime and of his alleged detention and torture.  The IJ also emphasized an inconsistency between Duran-Quiroz's asylum application, where he indicated that he was imprisoned in Nicaragua for 13 days, and his hearing testimony, where he stated he was imprisoned for 4 to 5 months.  The IJ also considered Duran-Quiroz's corroborating evidence, which consisted of three affidavits from his sisters.  Although the IJ acknowledged that the affidavits contained specific information supporting Duran-Quiroz's claim, he found that they were not sufficiently corroborating because they did not explain how the sisters obtained the information or whether they had personal knowledge of the events in question.  The IJ also found that Duran-Quiroz had failed to establish a well-founded fear of future persecution because there was no longer a civil war in Nicaragua, and he would not suffer retaliation from opposing the Sandinistas during that war.

The IJ also pretermitted Duran-Quiroz's application for cancellation of removal based on a disqualifying conviction for retail theft.  The IJ found that the

3

theft was a crime of moral turpitude and that Duran-Quiroz had not established that he was convicted of a crime with a possible punishment of less than one year of imprisonment, and, therefore, he was not eligible for cancellation of removal. *See Matter of Cortez*, 25 I. & N. Dec. 301, 307-08 (2010).  The IJ, however, granted Duran-Quiroz voluntary departure, with an alternative removal order to Nicaragua should he fail to depart voluntarily.

On appeal to the BIA, Duran-Quiroz argued that the IJ erred in making its adverse credibility determination and that his retail-theft conviction did not pretermit cancellation of removal.  The BIA, agreeing with the IJ, dismissed his appeal.  This is Duran-Quiroz's petition for review.

## II.

We review only the BIA's decision except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well."  *Id*.  Although the BIA did not expressly adopt the IJ's decision here, the BIA adopted the IJ's reasoning and briefly articulated its reasons for doing so, and, thus, we review both decisions.

We review factual determinations under the "highly deferential" substantial-evidence test, and we must affirm a decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id*. at

4

1283-84 (internal quotation marks omitted).  To reverse a BIA factual finding, we must find that "the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).  Like other factual findings, credibility determinations are reviewed under the substantial-evidence test.  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).

An alien may qualify for asylum by showing either:  (1) past persecution based on a protected ground, including political opinion, or (2) a "well-founded fear" that he will be persecuted based on a protected ground.  *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290 (11th Cir. 2006).  The alien bears the burden of establishing asylum eligibility by offering "credible, direct, and specific evidence in the record."  *Forgue*, 401 F.3d at 1286-87 (internal quotation marks omitted). The credible testimony of an applicant alone may be sufficient to establish asylum eligibility.  *Id*. at 1287.  "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application."  *Id*.  The weaker the testimony, the greater the need for corroborative evidence.  *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005).  "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d

5

1247, 1255 (11th Cir. 2006).

For there to be a proper adverse credibility determination, the IJ must have made a clean, explicit determination of credibility. *Yang*, 418 F.3d at 1201. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287 (internal quotation marks omitted).

Duran-Quiroz has failed to satisfy this burden. Here, the IJ and BIA made a clean adverse credibility determination and gave specific, cogent reasons for finding Duran-Quiroz incredible, pointing to, among other things, a discrepancy between his asylum application and his testimony. *See Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1343 (11th Cir. 2004) (affirming an adverse credibility determination based on a finding that the alien's testimony conflicted with prior answers given in other documents). The discrepancy between Duran-Quiroz's asylum application, where he indicated that he was imprisoned for 13 days, and his hearing testimony, where he stated he was imprisoned for 4 to 5 months, was a significant one that supports the IJ's and BIA's adverse credibility finding.[2]

---

[2] The REAL ID Act of 2005 provides that adverse credibility determinations may be premised upon inconsistencies that do not go to "the heart of the applicant's claim." *See* Pub. L. No. 109-13, § 101(a)(3), (d)(4)(C), 119 Stat. 231, 303, 305 (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C)). Because Duran-Quiroz filed his asylum application before these amendments became effective, they do not apply to his claims. This court has not decided

6

Further, the IJ and the BIA were permitted to discredit Duran-Quiroz's testimony that the lawyer who prepared his asylum application incorrectly transcribed his statements in light of the fact that Duran-Quiroz has failed to point to any other evidence in the record that sufficiently explains this discrepancy. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006) (holding that offering tenable explanations alone to explain inconsistencies does not necessarily compel reversal of the IJ's credibility determination).

The record also supports the IJ's and BIA's finding that Duran-Quiroz's testimony was vague, unspecific, and hard to follow. For example, he could not sufficiently articulate why he disagreed with the Sandinista regime or why he switched from supporting it to opposing it. And his testimony concerning his detention, torture, and military service was severely lacking in detail.

Further, Duran-Quiroz did not present any corroborating evidence other than three affidavits from his sisters, and the record supports the IJ's and BIA's finding that the affidavits were deserving of minimal weight because they did not explain how the sisters obtained the information or whether they had personal knowledge of the events in question.

---

whether adverse credibility determinations in pre-REAL ID Act cases must be based on inconsistencies that go to the heart of the claim. *See Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1049 n.7 (11th Cir. 2009). Nonetheless, we need not decide this issue because the inconsistencies identified by the IJ and the BIA in this case relate directly to Duran-Quiroz's claims of persecution.

Because we conclude that substantial evidence supports the IJ's and BIA's conclusion that Duran-Quiroz is ineligible for asylum on the basis of an adverse credibility determination and the insufficiency of corroborating evidence, he cannot satisfy the higher burdens for withholding of removal under the INA or relief under the CAT. *Zheng*, 451 F.3d at 1292.

### III.

On appeal, Duran-Quiroz argues for the first time that the Supreme Court's decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012) invalidates the IJ's and BIA's finding that he was ineligible for cancellation of removal. We review our subject-matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006). In a petition for review, we generally only have jurisdiction to consider claims that have been administratively exhausted. *See* 8 U.S.C. § 1252(d)(1); *Sundar v. I.N.S.*, 328 F.3d 1320, 1323 (11th Cir. 2003). Thus, we generally lack jurisdiction to review claims not raised before the BIA. *Amaya-Artunduaga*, 463 F.3d at 1250. Although some claims may not require exhaustion because the BIA does not have the power to adjudicate those claims, where the BIA can remedy a claim, the exhaustion requirement applies with full force. *See Sundar*, 328 F.3d at 1325.

In *Vartelas*, the Supreme Court held that applying the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) to a pre-IIRIRA conviction,

8

thereby depriving the alien of his previously-held right to return to the U.S. after brief trips abroad, was impermissibly retroactive. 132 S. Ct. at 1483-84. Duran-Quiroz argues that because IIRIRA could not be applied retroactively to a pre-IIRIRA conviction in *Vartelas*, it cannot be here either. Duran-Quiroz did not raise this argument before either the IJ or the BIA. Although *Vartelas* was decided after the BIA issued its decision in this case, similar arguments concerning IIRIRA's retroactive applicability to pre-IIRIRA convictions existed, and could have been raised, before *Vartelas* was decided. *See, e.g.*, *I.N.S. v. St. Cyr*, 533 U.S. 289, 314-26 (2001) (considering an IIRIRA retroactivity argument).

Further, the BIA could have properly heard this claim because *Vartelas* merely interpreted the INA, which the BIA has the authority to do. *See Vartelas*, 132 S. Ct. at 1486-87; *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008). Therefore, because Duran-Quiroz failed to administratively exhaust his *Vartelas* claim and there is no cognizable excuse or exception, we lack jurisdiction to consider it.

Because Duran-Quiroz failed to raise any other arguments in his brief to this court concerning his eligibility for cancellation of removal, he has abandoned those issues. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

IV.

9

The record does not compel reversal of the BIA's order affirming the denial of Duran-Quiroz's applications for asylum and withholding of removal, under both the INA and the CAT, based on an adverse credibility determination.  We lack jurisdiction, however, to consider Duran-Quiroz's arguments concerning the denial of his application for cancellation of removal.  We deny his petition in part, and dismiss it in part.

**PETITION DENIED in part and DISMISSED in part.**