[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13102
Non-Argument Calendar
_____

Agency No. A088-094-310

DAINORA BUDNIKAITE MACIENE,
EGIDIJUS MACYS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 7, 2015)

Before JORDAN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Dainora Maciene and Egidijus Macys, a married couple who are natives and citizens of Lithuania, (collectively "Petitioners"), petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") decision denying their applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA").  On appeal, the Petitioners argue first that the BIA erred in denying their applications for asylum.  They argue that the harm Maciene suffered in Lithuania, including being beaten and raped by her first husband, rose to the level of persecution, and that she has a well-founded fear of future persecution because the government of Lithuania is unwilling or unable to protect her from him.  They contend that these facts qualify both her and Macys for asylum.  Second, the Petitioners argue that the BIA erred in denying Maciene's application for withholding of removal.  They argue that the evidence in the record undermines the IJ and the BIA's determination that changed conditions in Lithuania rebutted any presumption that Maciene's life or freedom would be threatened if she returned.  Finally, the Petitioners argue that the BIA erred in denying Macys's application for withholding of removal because, if returned to Lithuania, Macys will suffer persecution on account of Maciene's membership in a particular social group.

I.

When the BIA issues a decision, we review only that decision, unless the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). When the BIA explicitly agrees with the findings of the IJ, we review the decisions of both the BIA and the IJ as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). If the BIA declines to address an IJ's alternative basis for a conclusion, the alternative basis is not an issue before us for review. *See Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 n.2 (11th Cir. 2006).

We review our subject matter jurisdiction *de novo*. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). An alien seeking asylum must file her application within one year of her arrival in the United States, or show that changed or extraordinary circumstances warrant consideration of an untimely application. INA § 208(a)(2)(B), (a)(2)(D), 8 U.S.C. § 1158(a)(2)(B), (a)(2)(D). Moreover, the INA precludes judicial review of an agency determination regarding the timeliness of an asylum application, including a determination that an applicant failed to show changed or extraordinary circumstances. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3). Accordingly, we lack jurisdiction to review the BIA's decisions as to whether an alien complied with the one-year time limit for filing an asylum application or whether extraordinary

3

circumstances justified an untimely filing. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

We lack jurisdiction to review the BIA's denial of the Petitioners' asylum applications on the basis that they were untimely. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); *Ruiz*, 479 F.3d at 765. Therefore, we dismiss the petition for review as to their asylum claims.

## II.

We may not review a final order of removal unless "the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). If a petitioner has failed to exhaust her administrative remedies by not raising an issue in her notice of appeal or appeal brief to the BIA, we lack jurisdiction to consider the claim. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250-51 (11th Cir. 2006). To properly exhaust a claim, the alien must raise the issue in such a way as to give the agency a "full opportunity" to consider the claim and compile a record adequate for judicial review. *Id.* at 1250 (quotation omitted). We have explained that to adequately raise a claim before the BIA, a petitioner need only argue the "core issue." *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008). Thus, exhaustion "is not a stringent requirement," and it does not require a petitioner to use precise legal

4

terminology or provide a well-developed argument to support her claim. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015).

Whether an alien is statutorily ineligible for withholding of removal is a factual determination that we review under the substantial-evidence test. *Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 727 (11th Cir. 2010). The substantial-evidence test applies to a determination that changed country conditions negate a presumption that the alien will be persecuted if returned to her country of origin. *See id.* at 727-33; *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1199-1200 (11th Cir. 2009).

Under the substantial-evidence test, we view the evidence "in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). We must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). We may reverse "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough." *Id.* Our inquiry is "highly deferential" and we consider "only whether there is substantial evidence for the findings made by the BIA, *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made." *Id.* (quotation omitted). The substantial-evidence test does not allow us to reweigh the importance attributed to specific evidence in the record. *Djonda v. U.S. Att'y Gen.*,

5

514 F.3d 1168, 1175 (11th Cir. 2008).  The record compels a reversal only when there is "no reasonable basis" for the decision.  *Adefemi*, 386 F.3d at 1029.

To qualify for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of her race, religion, nationality, membership in a particular social group, or political opinion. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  The applicant bears the burden of demonstrating that she would "more likely than not" be persecuted upon being returned to her country of origin.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (quotation omitted).  This burden may be satisfied in two ways.  First, an alien may establish past persecution based on a statutorily protected ground.  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). Past persecution creates a rebuttable presumption that her life or freedom would be threatened upon return to her country.  *Id.*  Second, an alien is entitled to withholding of removal if she establishes a future threat to her life or freedom in her country on account of a protected ground.  *Id.*

If the alien demonstrates past persecution, the government can rebut the presumption that her life or freedom would be threatened upon return to her country by showing, by a preponderance of the evidence, that (1) "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of" a protected ground; or (2) "[t]he applicant

6

could avoid a future threat to . . . her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." *Imelda*, 611 F.3d at 728 (brackets and ellipsis in original) (quotation omitted).

Although we have declined to fashion a bright line rule for what constitutes a fundamental change in circumstances, we have explained that the change must be one that is sufficient to rebut the presumption that the applicant's life or freedom would be threatened upon her return to her home country. *Id.* at 729. The BIA is permitted to rely heavily on Department of State reports when making this determination as long as it does not fail to account for the unique circumstances of an applicant's case. *Id.* at 728-29. Indeed, "[g]eneral information about the conditions in a given country are only useful to the extent that they comment upon or are relevant to the highly specific question of whether *this individual* has suffered or is likely to suffer persecution in a country." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1368 (11th Cir. 2011) (quotation omitted).

In *Imelda*, we concluded that the country report for Indonesia did not support the BIA's determination that the government had rebutted the applicant's presumption of a well-founded fear of future persecution. 611 F.3d at 733. In that case, the applicant had established past persecution on account of her religion (Christianity) and her ethnicity (Chinese). *Id.* at 726-27. However, the country

report did not address whether conditions for Christians in the applicant's home province or the country in general had improved, and, for the two provinces about which it reported improvements, it still detailed significant acts of violence directed at Christians.  *Id.* at 731-32.  Moreover, although the country report stated that harassment directed at ethnic Chinese "continued to decline from previous years," it did not provide any basis to measure the extent of that decline.  *Id.* at 732-33.  Thus, we held that the improvements discussed in the country report did not rebut the presumption of a future threat to the applicant's life or freedom.  *Id.* at 733.

On the other hand, the petitioner in *Mehmeti* argued that the BIA erred when it relied solely on the country report to conclude that the government had rebutted his presumption of a well-founded fear of persecution in Albania.  572 F.3d at 1198-99.  Nevertheless, we held that substantial evidence supported the BIA's determination that changed country conditions in Albania rebutted the presumption.  *Id.* at 1200.

Substantial evidence supports the IJ and BIA's determination that changed conditions in Lithuania rebut any presumption that Maciene would be persecuted if she were removed.  In particular, there was evidence that Lithuania passed its first law on protection against domestic violence in 2011, which required police to investigate reports of domestic violence even if the victim did not press charges,

and that after passage of this law, police investigations of domestic violence increased substantially. Accordingly, we deny the petition for review as to Maciene's claim for withholding of removal.

III.

Whether an alien has suffered past persecution is a factual finding that we review under the substantial-evidence test. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350, 1352-53 (11th Cir. 2009) (applying the substantial-evidence test in considering whether prior incidents rose to the level of past persecution); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290-92 (11th Cir. 2006) (applying the substantial-evidence test to an IJ's determination that the petitioner had failed to establish a well-founded fear of persecution and noting that the petitioner's five-day detention did not "*compel* the conclusion that he experienced past persecution").

Persecution is an "extreme concept" and requires "more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1229, 1231 (quotation omitted) (concluding that threats against an asylum applicant, her brother, and her university group were mere harassment not amounting to persecution). "Minor physical abuse and brief detentions do not amount to persecution." *Kazemzadeh*, 577 F.3d at 1353. In determining whether an applicant has suffered past persecution, the factfinder must consider the cumulative effects of

9

any alleged incidents.  *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

Furthermore, unlike the asylum statute, the withholding-of-removal statute does not provide derivative benefits to spouses.  *Id.* at 862.  Accordingly, "there are no derivative benefits associated with a grant of withholding of removal."  *Id.*

Substantial evidence supports the BIA's determination that Macys did not establish that he would more likely than not face persecution on account of a protected ground if he returned to Lithuania.  First, Macys never alleged he was a member of a particular social group, but rather claimed he was entitled to relief because of Maciene's membership in a particular social group.  But because there are no derivative benefits under the withholding-of-removal statute, Macys must establish persecution on account of his own membership in a particular social group.  Second, the record does not compel a finding that the mistreatment Macys suffered or would more likely than not suffer in the future from Maciene's ex-husband constitutes persecution.  Accordingly, we deny the petition for review as to Macys's claim for withholding of removal.

Upon review of the entire record, and after consideration of the parties' briefs, we dismiss the petition in part and deny the petition in part.

**PETITION DISMISSED IN PART AND DENIED IN PART.**