[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13484
Non-Argument Calendar

_____

Agency No. A087-881-063

YANLING LI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 29, 2017)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Yanling Li, a native and citizen of China, petitions for review of an order

that affirmed the denial of her applications for asylum and withholding of removal

under the Immigration and Nationality Act and the United Nations Convention

Against Torture and Other Cruel, Inhuman and Degrading Treatment or

Punishment. 8 U.S.C. §§ 1158(b), 1231(b)(3). The Board of Immigration Appeals

affirmed the findings of the immigration judge that Li failed to establish she had

suffered past persecution or had a well-founded fear of future persecution based on

her participation in an unregistered church in China. We deny Li's petition.

Because the Board agreed with the findings of the immigration judge, we

review both their decisions. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th

Cir. 2010). We review *de novo* the legal conclusions of the Board and the

immigration judge, and we review related findings of fact for substantial evidence.

*Id.* at 948. The substantial evidence test requires that we affirm the decision so

long as it is "supported by reasonable, substantial, and probative evidence on the

record considered as a whole." *Id.* (quoting *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229,

1236 (11th Cir. 2006)). We can reverse "only when the record compels a reversal;

the mere fact that the record may support a contrary conclusion is not enough to

justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d

1022, 1027 (11th Cir. 2004) (en banc).

The Attorney General has authority to grant asylum to an alien who qualifies

as a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is "any person who is outside

any country of such person's nationality . . . who is unable or unwilling to return to

. . . [or] to avail him or herself of the protection of that country because of persecution or a well–founded fear of persecution on account of . . . religion." *Id.* § 1101(a)(42)(A). To attain refugee status, an alien must present specific and credible evidence that she had been persecuted earlier or has a well–founded fear that she will face persecution based on one of the protected grounds. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (citing 8 U.S.C. § 1158(b)(1)(B)(i)).

Persecution is an "extreme concept" requiring evidence of more than harassment or "a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005). We evaluate the harms suffered cumulatively in determining whether an alien was persecuted. *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013). A well-founded fear of future persecution exists only if the alien establishes that there is a reasonable possibility she will be singled out for persecution on account of a protected ground and that her fear of persecution is "subjectively genuine and objectively reasonable." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009). Alternatively, the alien can present evidence that she is a member of, or is identified with, a group that is subject to a "pattern or practice" of persecution. *Id.*

"Minor physical abuse and brief detentions do not amount to persecution." *Id.* at 1353. Evidence that an alien was imprisoned for 36 hours in a small cell with

3

12 people, forced to drink a "very dirty liquid" and eat something "very bad," and endured being hit with a belt and kicked, which caused lacerations and bruising that required treatment for two days in a hospital did not compel a finding of persecution in *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008). Nor, we concluded, was an alien persecuted when he was imprisoned for four days, during which he was interrogated for five hours and beaten, and was monitored after his release. *Kazemzadeh*, 577 F.3d at 1353. And in *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287 (11th Cir. 2006), we concluded that evidence of an alien being imprisoned for five days, forced to watch reeducation videos, stand in the sun for two hours, and sign a pledge agreeing to forsake his religion did not establish past persecution. *Id.* at 1289, 1291–92.

Exposure to a variety of harms for a prolonged period can rise to the level of persecution. For example, in *Shi* we concluded that an alien suffered past persecution when officials barged into his father's home, confiscated bibles, imprisoned him for seven days, subjected him to two interrogations during which he was assaulted while being questioned about his church and accused of traitorous conduct, and handcuffed him to an iron bar located outside where he remained overnight in the rain. 707 F.3d at 1232–33. That "sequence of experiences," we held, amounted to "extreme and egregious" maltreatment that constituted persecution. *Id.* at 1235; *see Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211 (11th Cir.

2007) (the cumulative effect of beatings, arrests, searches, interrogations, being imprisoned for 15 days during which he was given little food or water and threatened with being shot, and continuing to be stalked, threatened, and assaulted after relocating amounted to past persecution). Shi being imprisoned for a week and undergoing two interrogations during which he was slapped in the face, threatened with more serious harm, and had a chair kicked out from under him was more grievous than the experiences of the aliens in *Djonda* and *Zheng* who, we explained, were subject to shorter "detention[s] combined with some physical abuse." *Shi*, 707 F.3d at 1237. Those aliens, we explained, had not also endured a church raid, impounding of their religious materials, and the "singularly cruel . . . tactic" perpetrated on Shi of being shackled to a post and exposed to harsh weather. *Id.* at 1237–39. And, disparate from the aliens in *Djonda* and *Zheng*, Shi's ordeal did not end until after officials sensed he might die from a high fever and sore throat. *Id.* at 1237–38. The brutalities heaped on Shi "[rose] to the extreme level required to compel a finding of persecution." *Id.* at 1239.

Substantial evidence supports the finding that Li failed to establish that she suffered past persecution in China for her participation in an unregistered church. Li's short detention, minor injuries, and post-release inconveniences were not on par with the "extreme and egregious" abuse in *Shi*, *id.* at 1235. Officials arrested Li during a meeting of an unregistered church and confiscated materials, but Li's

detention lasted only four days. She underwent just one interrogation during which she sustained a single punch to the face and one lash on the back for which she was treated for bruises and dizziness during a 30-minute doctor visit. The aliens in *Djonda* and *Kazemzadeh* endured similar or worse abuse than Li. *See Djonda*, 514 F.3d at 1171, 1174 (suffering lacerations and bruising that was treated during a two-day stay in a hospital was not persecution); *Kazemzadeh*, 577 F.3d at 1351 (being incarcerated for 4 days and undergoing a 5-hour interrogation and being beaten did not amount to past persecution). And like the aliens in *Kazemzadeh* and *Zheng*, Li was required to sign a "promise letter" before her release and required to return to the police station weekly. Considered cumulatively, Li's mistreatment did not "rise to the extreme level required to compel a finding of persecution." *Shi*, 707 F.3d at 1239. Because Li failed to establish past persecution, she was not entitled to a presumption that she faced future persecution. *See Kazemzadeh*, 577 F.3d at 1351 (citing 8 C.F.R. § 208.13(b)(1)).

Substantial evidence also supports the finding that Li does not have a well-founded fear of future persecution based on her religious activities. Li submitted several reports on country conditions, the 2007 Asylum Profile, and the 2013 International Religious Freedom Report stating that members of unregistered churches undergo some harassment and mistreatment by Chinese officials, but those reports also stated that the penalties imposed on unregistered churches vary

6

in different regions and some localities tolerate the churches. The reports stated that church leaders and religious dissidents were punished more severely, but Li introduced no evidence that she was or would be regarded as more than a congregant of an unregistered church. Li also failed to introduce any evidence that Chinese officials had targeted unregistered churches in her province or had harassed or limited the travel of or work available to other congregants who were arrested with her. Li stated in her application that local officials had visited her family, threatened to prosecute them if they withheld information about her location, and warned that Li was "in serious trouble," but those encounters failed to establish that she faced future persecution. And a report prepared by the Law Library of Congress stated there was no "authoritative information" that persons "released on supervision after being temporarily detained or subject to short term administrative detention . . . would be arrested upon returning to China." Li's evidence does not compel the conclusion that she is a member of or identified with a group subject to a "pattern or practice" of persecution or that she will be singled out for persecution if she returns to China. *See Kazemzadeh*, 577 F.3d at 1352.

Li also does not qualify for withholding of removal or relief under the Convention. Li had to prove, respectively, that it is more likely than not that her "life or freedom would be threatened in [China] because of . . . religion," 8 U.S.C. § 1231(b)(3)(A), or that "she would be tortured if removed to the proposed country

7

of removal," 8 C.F.R. § 208.16(c)(3). Because Li cannot satisfy the standard to obtain asylum relief, she necessarily fails to qualify under the more stringent standards imposed for withholding of removal and relief under the Convention. *See Zheng*, 451 F.3d at 1292.

We **DENY** Li's petition for review.